```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                                 - - -

 4     STARHOME GMBH,                  )      Civil Action
                                       )
 5          Plaintiff,                 )
                                       )
 6          v.                         )
                                       )
 7     AT&T MOBILITY LLC,              )
       ROAMWARE, INC. AND              )
 8     T-MOBILE USA, INC.,             )
                                       )
 9          Defendants.                )      No. 10-434-GMS

10                                 - - -
                               Wilmington, Delaware
11                          Wednesday, March 14, 2012
                                   9:30 a.m.
12                              Markman Hearing
                                   - - -
13
       BEFORE:   HONORABLE GREGORY M. SLEET, Chief Judge
14
       APPEARANCES:
15
                 KENNETH L. DORSNEY, ESQ.
16               Morris James LLP
                       -and-
17               JOHN DiMATTEO, ESQ., and
                 ROBERT G. KOFSKY, ESQ.
18               Willkie Farr & Gallagher LLP

19                                  Counsel for Plaintiff

20               RODGER D. SMITH, III, ESQ.
                 Morris, Nichols, Arsht & Tunnell LLP
21                     -and-
                 JOSH KREVITT, ESQ.,
22               R. SCOTT ROE, ESQ., and
                 BENJAMIN HERSHKOWITZ, ESQ.
23               Gibson, Dunn & Crutcher LLP
                 (New York, NY)
24
                                    Counsel for Defendants
25
```

1           THE COURT:  Good morning, counsel.  Please, take

2    your seats.

3           Why don't we start out with a round of

4    reintroductions, beginning with plaintiff.

5           MR. DORSNEY:  Good morning, Your Honor.  Ken

6    Dorsney from Morris James.  I would like to introduce the

7    Court to John DiMatteo and Robert Kofsky of Willkie Farr;

8    from Infographics Jeff Herzka; and Shi Ophir is with us from

9    Israel from Starhome sitting in the back.

10           THE COURT:  Good morning.

11           Mr. Smith.  Good morning.

12           MR. SMITH:  Good morning, Your Honor.  Rodger

13    Smith from Morris Nichols Arsht & Tunnell for the

14    defendants.  With me at counsel table this morning are my

15    co-counsel from Gibson Dunn & Crutcher, Josh Krevitt, Ben

16    Hershkowitz, and Scott Roe.

17           THE COURT:  Good morning.  All right.

18           Counsel, have you discussed how you want to

19    proceed today?

20           MR. DiMATTEO:  Yes, we have, Your Honor.

21           THE COURT:  What do you want to propose?

22           MR. DiMATTEO:  Starhome will begin and address

23    some of the terms that are near and dear to Starhome's

24    heart, and Roamware will follow and respond to our arguments

25    and present any terms that are near and dear to their heart.

1    And we may or --

2              THE COURT:  You will present the terms that you

3    want me to resolve.  Whether they are near and dear to your

4    heart, I don't much care, frankly.  I am not trying to be

5    unkind.  But, really --

6              MR. DiMATTEO:  I understand.

7              THE COURT:  You have agreed on sort of where the

8    rubber meets the road in terms of what is at issue.  Is that

9    correct?

10             MR. DiMATTEO:  That is my hope and expectation,

11   yes, Your Honor.

12             THE COURT:  You are proposing to go through that

13   list of elements, discuss your position on them, then I am

14   going to hear a response.

15             MR. DiMATTEO:  Yes.

16             THE COURT:  Then I will give you a reply.  That

17   is what I am going to do.

18             Is that what you envision, counsel?

19             MR. KREVITT:  Your Honor, I am fine with that

20   procedure.  It's not consistent with the discussion that I

21   had with counsel this morning.

22             THE COURT:  Tell me what you discussed this

23   morning.  That's why I start out this way.

24             MR. KREVITT:  I understand, Your Honor.  It is

25   perfectly appropriate for us to try to understand how we are

1      going to proceed today.

2                    There are 12 terms, roughly, depending on how

3      you chop it up --

4                    THE COURT:  That is roughly my count.

5                    MR. KREVITT:  -- that have been submitted to

6      Your Honor.  As we would expect Your Honor would want, we

7      approached Starhome yesterday and asked exactly the question

8      Your Honor raised this morning.  How should we proceed today

9      and are there terms that maybe we don't need to spend the

10     time with the Court on and the briefing is sufficient?

11                   Starhome's response, just yesterday, was, We

12     need to address all the terms.

13                   And that's fine.  That's fine.  We came

14     prepared, Your Honor, to do just that.

15                   Five minutes ago, or five minutes before this

16     hearing began, Mr. DiMatteo informed me that there had been

17     a change in Starhome's approach and that rather than address

18     12 terms today, for which we prepared and are of course

19     prepared, Starhome intends to present on just two terms, and

20     we would respond to those terms and then we are free to do

21     whatever it is we want to do.

22                   We are obviously prepared to proceed in any way

23     that is most helpful to the Court.

24                   THE COURT:  On that point, here is the thing.  I

25     could take these matters on submission.  There is nothing in

1    the Markman decision that requires me to hold the hearing.

2    The reason I hold Markman hearings is to put a finer point

3    on the matters in dispute so that I can understand really

4    what is at issue, better understand the technology, better

5    understand about where the parties disagree, so I can try to

6    do my best in coming up with a correct solution or

7    resolution of the disagreement, whether it is correct or

8    not.  I don't have a very good batting average, not me

9    personally but all of us District Judges, in terms of the

10   Federal Circuit.  It is just the life we lead.  Life tenure

11   has its ups and downs.  That is all right.  I get that.

12   What I need you to do is sharpen that focus.

13            MR. DiMATTEO:  Certainly, Your Honor.  Without

14   getting distracted into "He said, she said" today, Starhome

15   just wants to address two claim terms:  intelligent gateway

16   and routing center.  Any other terms, we are happy with the

17   submission.  We think the ordinary meanings, typically, we

18   think the words are pretty clear.  I will defer to Roamware.

19   Any other terms they want to address today, we are happy to

20   address them.

21            MR. KREVITT:  As I said, Your Honor, I am fine

22   proceeding in that fashion.  I understand, given Mr.

23   DiMatteo's representations, that Mr. DiMatteo intends to

24   address two terms.

25            We believe the Court may find it helpful for us

1    to -- for all the reasons Your Honor identified -- for us to

2    run through the other terms.  We have prepared materials.

3    We can answer any questions Your Honor may have.  We will

4    try to do that as quickly as possible.  If it appears as we

5    are proceeding that Your Honor does not have questions on

6    those terms or believes that the Court has all the

7    information it needs, obviously, we will move on.

8            THE COURT:  Okay.  All right.  Intelligent

9    gateway and what?

10           MR. DiMATTEO:  Routing center.  That would be

11   the third one, C on defendants' list.  It is the second one

12   on plaintiff's list.  We try to keep things reasonably in

13   sync here.  It comes out of Claim 10.

14           THE COURT:  Just conferring with my law clerk

15   and confirming what our understanding is.

16           MR. DiMATTEO:  Yes, Your Honor.

17           THE COURT:  I have the final claim chart that

18   the parties submitted, the joint claim chart.  Intelligent

19   gateway is the first one.

20           MR. KREVITT:  Your Honor, routing center is

21   numbered by the Page 5 of the amended joint claim

22   construction chart.

23           THE COURT:  When was the amended joint claim

24   construction chart filed?

25           MR. KREVITT:  This is dated December 22, Your

```
 1    Honor.

 2                THE COURT:  That may be the rub here.  As the

 3    kids say, it may be "my bad."

 4                Mr. Dorsney, let me take a look at that.

 5                Okay.  Let's proceed with first addressing

 6    intelligent gateway and routing center.  I will get a

 7    response from the defendants, a reply from plaintiffs.

 8                And I will let you know what else if anything we

 9    are going to do.

10                MR. DiMATTEO:  I don't think there will be much

11    issue on routing center.

12                Your Honor, let me begin by just giving you a

13    little background on this invention.

14                THE COURT:  Go ahead.

15                MR. DiMATTEO:  During the late nineties and

16    early 2000s, when cellphones became very, very popular, if

17    you had occasion to travel abroad, with work, I often was

18    called to Europe.  I have a client there.  Frequently, it

19    was very frustrating.  While my phone would work, I could

20    make calls, be able to make a call, it was very difficult,

21    because I had to know, if I was in Germany, the right

22    sequence of numbers to dial home.  If I was to dial Germany,

23    I didn't know whether I had the city code or not.  And short

24    codes, which I am not a big short-code user, weren't

25    available at all.
```

 1             Today, with the advent of Starhome's invention

 2    that is now throughout Europe and the United States, that is

 3    no longer a problem.  It's a minor miracle.  I can

 4    personally attest to this.  I can just dial the number as if

 5    I am sitting here in Delaware, and it goes through

 6    magically.  I can dial from my phone book, which is really

 7    important, my contact list, I can click on it and I can be

 8    in Germany and dial Mr. Dorsney or I can dial my wife or

 9    whoever else I want to speak to, and this invention works.

10             Well, how does it work?  What was the problem

11    and how did they solve it?

12             The problem was, when I show up in Germany or

13    anywhere outside of the United States, to be specific, and I

14    try to dial a number at home, the mobile network, the

15    visiting network, and for my example, I will call it the

16    German network, doesn't recognize my sequence of dialing

17    numbers.  It has a switch there to switch my call, because

18    it doesn't recognize it.  So it just drops the call, or, I

19    don't know if you recall, you get like a message in German

20    that you couldn't understand.  It was a little frustrating.

21             The prior art solution at that time, to the

22    extent anybody was trying to solve the problem, was to try

23    to send my call in Germany back here to my T-Mobile account

24    to figure out what's going on and then to transfer back the

25    signal.  That was very complicated to do because the German

1    network had to constantly talk to my network back here and

2    try to figure out how to translate this call.

3           Starhome's solution was, we are not going to do

4    that.  What we are going to do is put in the German network,

5    the roaming network, an intelligent gateway, this box, this

6    computer box.  And we are going to fill it with all the

7    dialing sequences we know throughout the world, the dialing

8    sequences of T-Mobile New York, the dialing sequences of

9    South Africa, the dialing sequences of France, Germany,

10   every dialing sequence we know, as well as short codes,

11   these short codes.  There is this huge database of all this

12   information.  And we are going to tell the German network,

13   every time you get a roamer, somebody visiting you from

14   another country, and you can't figure out what he is

15   dialing, send it to our box, because our box will figure out

16   how to translate it and then send you the right number that

17   you will recognize, German network, to complete the call.

18          And that invention is the subject of two patents

19   that are in suit here, the '487 and '431 patents.  If we can

20   just take a look at the cover sheet.

21          Fortunately, Your Honor, this is the same

22   specification for both patents.  So for today, the

23   majorities of claims we are asserting are from the first,

24   the '487 patent.  My references will be to them.

25          So how does it work according to the invention?

1    Let's take a look at Figure 2.  We have here this No. 39, if

2    you would imagine, is me in Germany roaming and talking to

3    the German visiting network.  Here is No. 30, is the

4    visiting network.  And here, that number has this mobile

5    switch, and it's designed to take my calls and switch them

6    out to the public network that we all know about.

7              So when I dial my home number, without all the

8    German prefixes -- this switch doesn't understand them -- it

9    says, this is somebody from New York.  I don't know what he

10   is trying to dial.  So I am going to send this over to this

11   box here, the intelligent gateway.  And this intelligent

12   gateway has a database here, 31, it has logic combined with

13   that database to say, aha, I know this is a guy from New

14   York.  I know what he is trying to dial.  And I have the

15   right translated number for this German network to

16   recognize.

17             So it translates the number, sends it back to

18   the switch, sort of in German, if you will, in the German

19   switch protocol, and the call is completed.

20             This is fairly straightforward and fairly

21   simple, but a very important invention.

22             Let me show you now how its captured in the

23   claim language that's going to be part of today's

24   discussion.

25             This is Figure 2 on the left and Claim 10 on the

1    right, Your Honor.  And it's a system comprising an

2    intelligent gateway.  We know this is this box that Starhome

3    invented.  Associated with a first mobile network.  That is

4    going to be my German network or visiting network over here,

5    that first mobile network having connections to other mobile

6    telephone networks.  Okay.  It's connected to an

7    international gateway.  You can talk to other mobile

8    networks anywhere else.  Said intelligent gateway adapted to

9    translate a dialing sequence when dialed by a roaming

10   cellular telephone device roaming in said first mobile

11   network.

12            Okay.  So this intelligent gateway is going to

13   translate my numbers, translate the dialing sequence, into a

14   destination number.  That's the number that this German

15   switch will recognize.  Said roaming cellular telephone

16   device having a home network.  I have a home network.  Here

17   it's New York.  And a routing center in said first mobile

18   network.  This switch here.  Adapted to route said dialing

19   sequence network to the intelligent gateway for translating.

20            So this switch here is adapted to route the

21   calls to the intelligent gateway.

22            It's fairly straightforward, the claims.  And

23   the other claims are fairly descriptive and easy to

24   understand.

25            Like most defendants, they want to tear apart

```
 1    and look at every word and read limitations in.  I know I

 2    sound like a classic plaintiff in saying that.  I, too, have

 3    sat on that side of the table.  But I would be remiss if I

 4    didn't make that statement, Your Honor.

 5               I have a list here of all the different terms I

 6    understand that are in dispute.

 7               Intelligent gateway, mobile network, routing

 8    center, is identified as adapted to, adapted to deliver

 9    short messages, so and so forth.  These are fairly simple

10    terms, Your Honor.  I don't think they will require a

11    tremendous amount of argument and dispute to probably

12    construe.

13               As I told you, I want to focus just on two of

14    them, intelligent gateway and routing center.

15               Let's see what we are fighting about with

16    intelligent gateway.  Can I show Letter A.

17               This is in our answering brief to defendants'

18    reply brief.  We are saying that this box, this intelligent

19    gateway, it's a network element, it's like a computer box,

20    implemented in databases or the like and application logic

21    to perform its operations.

22               Now, in the context of the claims -- I will come

23    back to this disputed construction in a moment -- but in the

24    context of the claims, it is there, the intelligent gateway

25    is there to translate telephone numbers, dialing sequence.
```

1    It's going to take my New York dialing sequence and

2    translate it into a German dialing sequence to complete my

3    call.  That's the gateway's function that it performs.  I go

4    back to that.

5             The defendants want to add an additional

6    element.  They want the intelligent gateway to not only talk

7    to the mobile network, in other words, connected to the

8    German network, but they want it to require that it also has

9    to talk to some other network, something outside the mobile

10   network.  They use the term, it's connected to another

11   network external to the mobile network, for example, packet

12   switch network.

13            They are going to come to the podium and say

14   this is justified for three reasons.  They are going to say

15   it's justified by just the term gateway alone.  The fact

16   that we use the word gateway, that means it has to do two

17   things.  It's got to transfer information to the mobile and

18   another external network.  They are going to say that some

19   representation in our foreign prosecution mandates this

20   narrow construction.  And they are going to say, if you look

21   at one of our preferred embodiments, that mandates this

22   construction.

23            They are wrong, for three reasons.  There is no

24   dispute that the gateway performs some translation function.

25   That's key to the defendants' definition.  If we show their

opening brief at Page 4, gateway was universally understood

as a machine that provides necessary translation to connect

two different networks.  We don't really dispute that, Your

Honor.  In the context of this claim -- can I have Figure

2 -- this patent, this database and this intelligent gateway

is translating a dialing sequence that is recognized in the

home network.  In other words, it is translating a dialing

sequence that I would use in New York, to a dialing sequence

that would be recognized in Germany.  That is the gateway

function.

There is nothing about that that says, oh, this

has to be connected to anything else.  We look at how it's

used in the claims, that's very clear.

Can we take a look at Claim 10.  We walk through

Claim 10, and we see Claim 10 is associated with a first

mobile network.  And it translates the dialing sequence.

"Adapted to translate a dialing sequence."

When the patentees wanted to connect the

intelligent gateway to other networks, they expressly added

that limitation in.  I will direct your attention to Claim

1.  In Claim 1, the intelligent gateway is coupled to a

packet switch network.  And then later on, it's coupled to a

first mobile network.  So the patentees are very clear, when

they want the intelligent gateway to be connected to more

than the mobile network, they say so.  And why do they do

1    that?  That's a preferred embodiment.

2              If you will show Figure 4, please.

3              There is an embodiment where the intelligent

4    gateway is not only connected to the mobile switch center,

5    but it's also connected to other networks through a packet

6    of switch networks.  So it's inconsistent with the words of

7    the claims that are in suit.  And not just the words of the

8    claims of these patents, it is also inconsistent with the

9    description in the specification.

10             As I showed, if we go back to Figure 2, when you

11   read the description on how Figure 2 goes to translating

12   sequence 1, the switch doesn't recognize it, it goes over to

13   2, translates it, goes back to the switch 3, delivers it to

14   the phone network and finally meets the destination.  There

15   is nothing about this description that says the intelligent

16   gateway has to be connected to something else other than the

17   mobile network.  And that description is found at Column 3

18   of the patent, beginning around Line 23.

19             So there is nothing about the word gateway that

20   mandates connected to two networks.  There is nothing about

21   the description in the specification that says it's got to

22   be connected to two networks.  Indeed, the specification

23   says just the opposite.  And, three, there is nothing about

24   this foreign prosecution that the defendants wrap themselves

25   around which mandated either.

1          First, whenever a party in suit starts going to

2     foreign prosecutions and picking sound bytes from them, a

3     court has to be on its guard.  The Federal Circuit warns, be

4     very careful when you are going to go to that type of

5     extrinsic evidence.  This is a good example of it.

6               Can we show A-047.

7          This is the part of the foreign prosecution that

8     the defendants point to --

9               THE COURT:  You maintain this is not part of the

10    intrinsic record.

11              MR. DiMATTEO:  Not intrinsic.  In fact, they put

12    it in a separate declaration, outside the joint appendix.

13              THE COURT:  Do defendants agree with that

14    characterization?

15              MR. KREVITT:  Your Honor, technically, the

16    foreign prosecution is extrinsic evidence, which, as I will

17    explain in a moment, the Federal Circuit has instructed

18    District Courts to consider, not to ignore.

19              The answer to the precise question is that the

20    foreign prosecution is technically not part of the intrinsic

21    record.

22              THE COURT:  Okay.  We will talk about your

23    perception of what the Federal Circuit has instructed I must

24    do in a moment.

25              MR. KREVITT:  I am looking forward to that, Your

1    Honor.

2              THE COURT:  You may not be.  Let's see.

3              MR. DiMATTEO:  Okay.  So in this case, Your

4    Honor, the defendants do very little to explain what's

5    happening here.  There was a prior art reference called D-1

6    that had nothing to do with the home network, had nothing to

7    do with roamers and a roaming network and trying to

8    translate dialing sequences, had nothing to do with that.

9    And the examiner was pointed to some box.  And they are

10   saying, that does some sort of intelligent switching but

11   nothing like the gateway translating function that is done

12   here.  It's not a gateway, because the gateway provides

13   access to external went beyond the immediate network.

14             The examiner affirms that gateway is defined

15   this way, from one network to another, and it is submitted

16   that the claims and specifically the term intelligent

17   gateway should be construed in light of this definition.

18             There is nothing about this section of the

19   prosecution history which says, when you construe

20   intelligent gateway, you have to construe it as requiring it

21   communicating with a mobile network and communicating at the

22   same time to another network.  All the attorney is saying

23   here is that our gateway provides a translation function.

24             If we go back to Figure 2, our gateway is

25   providing a translation function with knowledge of the home

1  network.  I know about these foreign dialing sequences, so I

2  can translate them and connect them to another --

3                    THE COURT:  Counsel, would you go back.  That

4  section you had up from the foreign prosecution, is that in

5  my joint appendix?

6                    MR. DiMATTEO:  No, it is not, Your Honor.  I

7  think you will find that at Mr. Roe's declaration in his

8  opening briefing, Exhibit 5, then there is an A-047 in the

9  lower right-hand corner.

10                    THE COURT:  Okay.  Thank you.

11                    MR. DiMATTEO:  So, one, I don't think this is

12  relevant at all, that you should be considering this file

13  history.  Two, the defendants do nothing to explain to this

14  Court the prior art reference that was at issue and why

15  anything said here would mandate that this Court construe

16  gateway as something different than the words, the claims,

17  and the specification say.  And, three, once you understand

18  this, you realize that this doesn't apply at all to the

19  issue at hand.

20                    So that's all I have on intelligent gateway,

21  Your Honor.  It's a simple translator of my dialing

22  sequences into a dialing sequence that my roaming network

23  can recognize.

24                    THE COURT:  Let's go on to routing center.

25                    MR. DiMATTEO:  Routing center.  All right.

1          MR. KREVITT:  Excuse me.  Would you like --

2          THE COURT:  No.  Let's go on to routing center.

3          MR. KREVITT:  Very well.

4          MR. DiMATTEO:  All right.  There is no

5    dispute -- let's take a look at Claim 10, actually.  The

6    term routing center is found in Claim 10 of the '487 patent,

7    Your Honor.  And it came in there by amendment.  During the

8    prosecution of this patent, the patent attorney amended the

9    term mobile switching center to routing center.  I think I

10   have that amendment at my fingertips.

11         39, I think it is.

12         No, 37.

13         Well, I will let my colleagues at the bench find

14   me the right cite.

15         The short story is, putting back up Claim 10,

16   this originally said a mobile switching center in said first

17   mobile network.  During prosecution it was amended to

18   routing center.

19         Let me take a little detour and remind you where

20   this mobile switch center is.  Figure 2, that is this box

21   here, this switch which sends dialing sequences to and

22   receives it from the intelligent gateway.

23         Because of that, there is no dispute between the

24   parties that a routing center would include a mobile

25   switching center.  We are agreed on that.  The question this

1    Court has to answer is whether it is broader than a mobile

2    switching center, whether it needs something more because it

3    was amended from mobile switch center to routing center.

4    And if it is something broader, just how broad is it?

5    That's the question that's put to the Court.

6              Now, it's plaintiff's position, it's no broader

7    than a mobile switch center.  And if it's any broader, it's

8    only a slight variation of that.  And that's what I am going

9    to conclude with.

10             Before I get there, let me take a little detour

11   in explaining telephone calls.

12             This is greatly simplified so that I can

13   understand it.  I am not an expert on phone calls, but I

14   understand some of the basic concepts.  The basic concept is

15   every time you place a call, there are really two parts to

16   it.  There is the call itself, and the dialing sequence for

17   control signals.  This harks back to the old days -- and I

18   am old enough to say I did this -- when we used to have to

19   dial our numbers, that would set off a bunch of switches,

20   that would give me the dialing number, then there was an

21   actual switch, there was a switch that would connect the

22   wires, so when I called you down here in Delaware, there was

23   literally a connection for our voice to travel through.

24             That doesn't literally happen today.  Everything

25   is digitized and switched electronically.  But the same

1    concept of our call itself, the voice component, and the

2    dialing sequence, exists today.

3              And that is discussed in the specification at

4    various times, particularly on a feature called tramboning.

5    I am going to direct your attention to Column 3, Lines 30 to

6    40.

7              Actually, before we get there, let me go to

8    Figure 2.  This is little technical, so stay with me, Your

9    Honor.

10             When a call comes in, the mobile switch center

11   gets that dialing sequence that I talked about as well as

12   the call.  That is the phoning ringing, the call I am trying

13   to make.

14             The mobile switch center can do one of two

15   things with this invention.  It can say, I don't understand

16   this dialing sequence, so I am going to switch the whole

17   call, the voice component as well as the dialing sequence,

18   to the intelligent gateway.  So now the call itself has been

19   switched over to the Starhome box.  The mobile switch is

20   free to do other switches and go back.  The intelligent

21   gateway can do the translation and then send the call back.

22   I figured this out for you, and I am going to switch the

23   call back to the mobile switch center.  The term of art

24   there, they actually have a term of art for it, they call it

25   tramboning, if you will, because the call is sort of

1    tramboned by a route.

2              The other option described in the specification

3    is, certain switches have the ability to hold the call.

4    This switch is going to hold this call that it can't

5    understand, and instead of sending the whole call over to

6    the intelligent gateway, it's just going to send the dialing

7    sequence that says, intelligent gateway, here is a dialing

8    sequence I don't understand.  And it's going to hold the

9    call.  So instead of transferring the whole call over, it

10   just says, here, intelligent gateway, here is my dialing

11   sequence.  Can you translate it for me?  The intelligent

12   gateway translates it, thank you, and completes the call.

13             This is described in the specification at Column

14   3, Lines 30 to 40.

15             It's just below this.

16             Let me get 40 to 60.  I won't go through all

17   these acronyms in detail.

18             Step 3 represents, this step may be required

19   when the switch does not support the call redirection

20   switching.  The call redirection switching refers to a

21   process by which the intelligent gateway requests the switch

22   to route the call to a specified destination.

23             So in the context of the claim, call redirection

24   switching is the scenario where the switch sends everything,

25   the call and the dialing sequence, to the intelligent

1  gateway.

2  Can we scroll down a little more.

3  Step 3 at the bottom.

4  So when it's possible, when I have such a

5  switch, the state of the call may be either established or

6  in process.  When it's not possible, then I can send only

7  the data signal.  I am not doing this justice in describing

8  it well, Your Honor.  But you understand the concept.

9  There is two ways.  I can send the call and the

10  dialing sequence together or not.

11  So why am I boring you with this?  It comes down

12  to the term routing center, Your Honor.  A routing center

13  has to be able to route both the call and the dialing

14  sequence.  It's part of the mobile network.  And it has to

15  be able to manage both.  And basically it performs the

16  identical function.  It has to at least be able to perform

17  all the functions that the mobile switch center can call.

18  So why did the applicant amend it from mobile

19  switch center to routing center?  We don't know.  There is

20  nothing about the file history that mandated it or is

21  explained.  It's silent on the issue.

22  We don't think it's any broader than a mobile

23  switch center.  But if it is, it's not by much.  Perhaps the

24  applicant wanted to capture not only just mobile switching

25  but some embodiment where land lines are switched as well

1    through this, and translated.  Something a little broader

2    than a mobile switch center.

3         Defendants want to make this very broad.  And we

4    all know, when a defendant wants to make a claim term

5    broader, they must have some prior art in mind.  And I don't

6    know what prior art reference they have in mind.  And we

7    don't know that today.  Some day we perhaps will.  But what

8    they want the Court to construe is that it's any network

9    element that construes dialing sequence, just the dialing

10   sequence.  I will show you their construction -- oh, I

11   forgot to mention one very important thing, Your Honor.  I

12   will mention this, talk about their construction, and sit

13   down.

14        Last night, we slightly modified our definition

15   of routing center to capture this concept of a routing

16   center has to deal with calls and the sequence, and the

17   voice, and the dialing sequence.  I alerted counsel last

18   night with an e-mail to that effect.  I have for the Court,

19   if I may approach --

20             THE COURT:  Do you have two copies of that?

21             MR. DiMATTEO:  I have many copies.

22        So you are clear, Mr. Dorsney, when he handed up

23   the joint claim construction to you, that was our second

24   amended joint claim construction, which has this change in

25   it but hasn't been filed yet.  But it was the only one we

1    had around.

2              Just to show you the difference, here is what

3    the briefing said.

4              One or more elements responsible for dialing

5    sequence, routing calls with dialing sequences.  It has to

6    be able to deal with the call and the dialing sequence

7    itself, the routing center.

8              The defendants -- this is interesting -- they

9    agree that it's got to route dialing sequences.  They agree

10   that it's a mobile switch center.  But they are trying to

11   define it in the negative.  But it's not limited to that.  I

12   don't think the Court can do that in terms of claim

13   construction.  I can't say, well, we can all agree, an apple

14   is an apple.  But it's not limited to that.  That's not

15   going to help the jury, it's not going to help the Federal

16   Circuit, it's not going to help the parties narrow the

17   issues.  They have to propose some definition.  I don't know

18   what it is.  The reason we don't know what it is is we don't

19   know what prior art they have in mind when they are asking

20   this Court to broaden the term routing center to be

21   something beyond a mobile switch center.

22             That's all I have on the subject, Your Honor.

23             THE COURT:  Okay, counsel.  Let's hear from your

24   opponent.

25             MR. DiMATTEO:  Thank you.

1            MR. KREVITT:  Your Honor, for the record, Josh

2    Krevitt for the defendants.

3            THE COURT:  Good morning.

4            MR. KREVITT:  Good morning.  We have prepared

5    some materials that with your indulgence we would like to

6    hand up.

7            THE COURT:  Hand them to Ms. Walker.

8            MR. KREVITT:  As Your Honor will see, we have

9    materials in this packet on all of the terms.  And we have

10   tabs to help the Court find the portions that we are talking

11   about easily.

12           THE COURT:  Counsel, what I would like you to

13   do, in addition to whatever background you want to do, is

14   simply focus your attention on the two terms.

15           MR. KREVITT:  That is what I will do, Your

16   Honor.  Then we can take a break --

17           THE COURT:  I don't know if we will take a

18   break.

19           MR. KREVITT:  I mean pause and ask Your Honor

20   how the Court wishes to proceed.

21           Let me start with a very short response on Mr.

22   DiMatteo's description of the technology.

23           There is, with respect, a fundamental

24   mischaracterization of the invention, and everything flows

25   from that.  I think I am going to be able to show the Court

1   that.

2           As Mr. DiMatteo explained, this is a picture of

3   the PCT application, Your Honor, which is incorporated by

4   reference.  That is intrinsic evidence.  This is the prior

5   art.  And this shows two networks connected by just a good

6   old-fashioned telephone infrastructure.  As Mr. DiMatteo

7   explained, there were circumstances under which, if you were

8   roaming in one network, you couldn't access some of the

9   capabilities of your home network.  And the patents go to

10  that issue.

11          Mr. DiMatteo said that Starhome's invention is

12  used throughout the United States.  In fact, there are no

13  customers that use Starhome's product in the United States.

14  But it is true that the patent goes to this question of how

15  do we allow, when you are roaming, a user to access

16  capabilities of the home network.  That's what the patent

17  goes to.

18          And you see here, Your Honor, that the asserted

19  patents, Figure 1 there at the bottom, that is Starhome's

20  invention, one of the inventions.  That is the first figure

21  in the patent.  And that is the system that's disclosed in

22  the claims.

23          And the key, Your Honor, is the intelligent

24  gateway.  That is what we are going to turn to in just a

25  moment.  That is in blue, Your Honor.  And you can see that

that is connected on the left to the visiting network, which

is referred to as the VPLMN, that's the network that the

person roaming is visiting.  And the intelligent gateway is

in turn connected to a packet switch network.  That is in

yellow, Your Honor.  We are going to cover those issues in a

moment.

I just put up at the top, Your Honor, a portion

from the specification.  This refers to the present

invention.  This is not limited to the embodiments, as the

Court is aware.  When a patent specification describes the

present invention as opposed to a particular embodiment,

that carries more weight.  And the very first sentence, when

they begin to describe, that is highlighted there, the

system providing these services, that is the services to

which I was just referring, is based upon a configuration

comprising a global packet switch network connecting mobile

networks via intelligent gateways.

So what they are saying is the system is based

on the configuration that puts the intelligent gateway --

that is in blue -- between the network that is being visited

and a packet switch network.  And I am going to explain why

that is important in a moment.

One point I want to make right at the outset,

Your Honor, is there are two patents at issue in the case,

as Your Honor is aware.  The patents have both method claims

1    and system claims.  This is a really important point.  There

2    are only system claims asserted in this case, no method

3    claims.

4            I am going to explain in a moment why that is a

5    critical point, and why as a consequence Mr. DiMatteo's

6    presentation and description of the patents was inaccurate,

7    in ways that are relevant to the claim construction issues

8    before Your Honor.

9            Here, Your Honor, we have Figure 1 from the

10   patent and Figure 3 from the patent.  Those are the two

11   figures in the patent -- there are only two that disclose

12   the systems.  I am going to explain that.  That is very

13   important.  There are other figures in the patent.  But

14   there are only two that are disclosing the systems, the

15   embodiments in the patent.  Those are Figures 1 and Figures

16   3.

17           As you can see, Your Honor, in Figure 1 on the

18   left, you have again that intelligent gateway between a

19   visiting network and a packet switch network.  And on the

20   right, Your Honor, you have multiple intelligent gateways.

21   You see two there.  And they connect, networks and packet

22   switch network.  They are in all cases placed between a

23   packet switch network and another network.

24           Now, Mr. DiMatteo showed the Court only one

25   figure.  Actually, at one point, Figure 4 was shown just for

1   a moment.  But he essentially showed the Court only one

2   figure.  That was Figure 2.  The entire presentation that

3   Your Honor heard was based on Figure 2.  Figure 2 is not --

4   and this is explicit out of the patent -- is not a depiction

5   of the system claimed in the patent.  It is instead, Your

6   Honor -- and we highlighted the portions so Your Honor

7   wouldn't have to take my word for it -- it is a call flow

8   that is in accordance with the system of Figure 1.

9           Your Honor will recall, I showed Figure 1 and I

10  said that was one of two system embodiments.  There is

11  Figure 1 on the left.  Figure 2, which Mr. DiMatteo based

12  his presentation on, is a call flow.  It shows how the

13  system of Figure 1 can be used, how a call can be routed

14  through the system of Figure 1.

15          It is not a depiction of a system.  And that

16  will be very important as we go forward.

17          There are other call flows, Your Honor, in the

18  patent.  I just put them up here, Figure 4 and 5.  These are

19  call flows based on Figure 3.  So again, Figure 1 is a

20  system, call flow of Figure 2, and then there is Figure 3 is

21  a system, and these are call flows of Figure 3.

22          If we go back just for one moment to Figure 2, I

23  just want to correct something that Mr. DiMatteo said.  And

24  I am not an expert, either, so I wouldn't want somebody

25  scrutinizing every single word on the technology.  But there

were some important differences between his description and the patent that I just want to point out.

There are two ways that the patent says calls can be worked through the call flow of Figure 2, two ways. The first is, a call comes in and the mobile switch center, the MSC, holds the call.  The call never goes anywhere else within that system.  The call is held.  Dialing sequence and only dialing sequence is sent to the intelligent gateway. We need to figure out how we are going to route this call. We send a query, it's called a data query in the patent.  We send a data query to the intelligent gateway.  That is No. 2 there, Your Honor.  And No. 3, there is a response, it provides information, and the call is routed by the MSC.

That is call redirection.  That is what the patent refers to as call redirection.  Call redirection is not when it flows around No. 7.

So that is one way.  The call stays at the MSC, gets information from the intelligent gateway, and then is routed.

Another way is, in addition to the dialing sequence -- and these are separate things.  Mr. DiMatteo made that clear and the patent makes it clear.  There is dialing sequences on the one hand and the call itself on the other.  The second way this works, the call and the dialing sequences are sent to the intelligent gateway.  This gets a

1    little complicated.  But that call is then held at the

2    intelligent gateway.  The intelligent gateway forms a new

3    call.  It makes that call, sends that new call to the MSC,

4    which routes that to the other network.  The connection is

5    established.  And then those two calls, just like a switch,

6    are connected, a conference.  And that's why that is in

7    dashed lines, because it is actually not a call being

8    routed.  This new call that was created by the intelligent

9    gateway is connected with the original call that allows the

10   call to go through.  They are just two different ways to do

11   it.

12           So we move, as I mentioned, those are call flows

13   that relate to Figure 3.

14           Let's look at intelligent gateway, Your Honor.

15   I have some materials that I would like to walk through with

16   you on that.

17           First, the key question for the intelligent

18   gateway is whether or not it connects two networks.  There

19   are other subsidiary questions that I want to address.  But

20   that is, and that was clear from Mr. DiMatteo's presentation

21   as well, the key question is whether the intelligent gateway

22   must connect two networks.

23           I am going to show you, Your Honor, I hope, that

24   it must, both based on its plain and ordinary meaning, how

25   it's used in the patent, statements made in the foreign

1    prosecution -- I understand Your Honor has some skepticism

2    with respect to those.

3              THE COURT:  I do.

4              MR. KREVITT:  And I am going to walk you through

5    each of those, and in every turn they demonstrate that the

6    intelligent gateway must connect two networks.

7              Here is the key, Your Honor.  Mr. DiMatteo

8    showed you only Figure 2.  I want to emphasize that again,

9    because Figure 2 doesn't show the other network.  Figure 2

10   relates to method claims.  And because it's just talking

11   about the call flow, it leaves out the elements that aren't

12   necessary to explain the call flow.  It leaves out other

13   elements from Figure 1.  But all of the claims here are

14   system claims.  That is why Mr. DiMatteo showed you Figure

15   2, because it leaves out the packet switch network.

16             But when we look at the system embodiments,

17   every single one, the intelligent gateway connects a packet

18   switch network to another network, in every case without

19   exception.

20             So that is the key issue that we are going to

21   address.

22             As Your Honor is well aware, I am not going to

23   take Your Honor through the case law --

24             THE COURT:  No.  Go ahead.

25             MR. KREVITT:  Obviously, plain terms must be

1    given their plain and ordinary meaning.

2              THE COURT:  Just move on.

3              MR. KREVITT:  I am going to.  I wanted to set

4    this up.  If you go back to the definitions, please, there

5    are three definitions, there are many, many others.  The

6    term gateway has a plain and ordinary meaning.  It connects

7    two networks.  There is no dispute on that question.  I can

8    represent to Your Honor that we went searching for a

9    contrary definition and did not find it.  I can represent to

10   Your Honor that we put each of these three definitions in

11   our opening brief, Starhome responded and did not dispute,

12   did not challenge these, did not offer a contrary

13   definition.  Did not in any way take issue with the

14   fundamental and dispositive proposition that gateway has a

15   plain and ordinary meaning.  It connects two networks.

16             If you go back to the definitions, just the

17   first one, this is the IEEE Dictionary.  It is from 1996.

18   That was the dictionary that was in existence at the time of

19   the patent.  There was a revision later after the patent.

20   So we all know this definition remains the same.  That is

21   why we have '96.  A functional unit that interconnects a

22   local area network with another network.  Second definition:

23   Dedicated computer that attaches two or more networks.

24             The other definitions are the same, Your Honor.

25             So there is no dispute.  That is why I had that

1    law, that gateway had a plain and ordinary meaning.  That

2    question has not been disputed.

3         So we go to the next slide.  So the question is,

4    does the patent contain a disclaimer?  Does the patent

5    contain a contrary definition?  Is there something in the

6    patent that allows us to say, well, although gateway had a

7    plain and ordinary meaning, we are going to give it a

8    different meaning here?  Your Honor, there isn't.  It hasn't

9    been suggested that there is.  In fact, in every respect,

10   the patent is consistent with its plain and ordinary meaning

11   that existed at the time and exists today.  I am going to

12   walk Your Honor through that very quickly.

13        First, present invention.  Not limited to a

14   particular embodiment.  We looked at this sentence a few

15   moments ago.  The present invention as described with an

16   intelligent gateway connecting two networks.  This system

17   providing these services is based upon a configuration

18   comprising a global packet switch network, that's one

19   network, connecting mobile networks, those are other

20   networks, via intelligent gateways.

21        That is the present invention.

22        We go on.  The specification, which, as Mr.

23   DiMatteo said, is virtually identical for both patents --

24   when I say the specification, I am referring of course to

25   both patents.  The specification refers to intelligent

1    gateway just three times, other than the claims, Your Honor,

2    other than the claims -- this term, of course, appears in

3    the claims throughout -- but the specification refers to

4    intelligent gateway just three times.  Each and every one of

5    those times it refers to an intelligent gateway as

6    connecting two networks.  And we have this here, Your Honor.

7    The first we just looked at, of course.  The second, which

8    is referring to Figure 1, the first system, VPLMN 30, that

9    is a network, may be coupled to a global packet switch

10   network, another network, via a visited intelligent gateway.

11             The third time, Your Honor, same point, in

12   System 100, that is referring to Figure 3, the second

13   embodiment, the network which replaces the network 20 from

14   the original embodiment of Figure 1 is coupled to a packet

15   switch network via an intelligent gateway, a home

16   intelligent gateway.

17             Three times it's mentioned, three times it's

18   consistent, it connects two networks.

19             The figures, Your Honor -- and I would pause for

20   a moment.  At one point Mr. DiMatteo said we are relying on

21   just one embodiment.  As I hope will be very clear, that

22   statement is incorrect.  We are relying on every single

23   system embodiment disclosed in this patent.  The patent

24   describes just two system embodiments.  Those are at Figures

25   1 and 3.  We discussed that a moment ago.  As Your Honor can

1    see, in both of those figures, the system embodiments in

2    every embodiment in the patent, the intelligent gateway

3    connects multiple networks, connects at least two networks.

4              If we move on, at Slide 16 and 17, Your Honor,

5    we just put up Figure 1 and tied it, just so there would be

6    no question at all, to the specific language of the

7    specification, which makes clear, and we color-coordinated

8    that to demonstrate to Your Honor that in every single

9    embodiment, as described in the specification, as depicted

10   in the figures, every system embodiment, the intelligent

11   gateway connects multiple networks.

12             This is Figure 1 that we were looking at, then

13   Figure 3.

14             The PCT application -- I know I am at risk of

15   belaboring a point.  But given how important it is, I want

16   to make sure that this is very clear.  Every embodiment in

17   the patent, every system embodiment in the patent makes this

18   clear, the PCT application that I referred to a moment ago

19   incorporated by reference in the patent, intrinsic evidence,

20   same thing.  The service node, which is referred to in the

21   PCT as a gateway, connects the green network with the yellow

22   IP network.  So the blue gateway, referred to again in the

23   PCT as a service node, connects multiple gateways.  Every

24   embodiment, the PCT, everything consistent with the plain

25   and ordinary meaning.

1            So far, I have not in any way strayed from the

2    plain and ordinary meaning for every single embodiment in

3    this patent, every single system embodiment in this patent.

4            So, Your Honor, what did Mr. DiMatteo rely

5    entirely on?  Figure 2.  As I mentioned a moment ago, Figure

6    2 is a call flow.  It's a method of using the system of

7    Figure 1.

8            THE COURT:  Let me ask you this:  Is that

9    exactly a fair characterization, that he relied exclusively

10   on the figure?  Didn't he cite me to claim language?

11           MR. KREVITT:  Your Honor, I am going to turn to

12   the claim language.  With respect to the description of the

13   specification, he relied on only two things.  One, Figure 2.

14   And, two, a description of Figure 2 in the specification.

15   The presentation was limited to Figure 2.  Your Honor did

16   not see, until I stood at this podium, Figure 1.  Unless

17   Your Honor --

18           THE COURT:  In terms of this presentation, okay.

19           MR. KREVITT:  Exactly, Your Honor.  Nor did Your

20   Honor see Figure 3, the two system embodiments.

21           I am going to turn to the claim language in a

22   moment.

23           The only use --

24           THE COURT:  Yes.  We should be able to do this

25   without reference to figures, shouldn't we?

1            MR. KREVITT:  No, Your Honor.  Here is why.  I

2     will explain.  It is a very good question.  With respect to

3     intelligent gateway, every single claim simply says

4     intelligent gateway.  It doesn't say intelligent gateway

5     that's connected to two networks.  It doesn't say

6     intelligent gateway that is not connected to two networks.

7     We have a dispute.  We are suggesting to Your Honor that

8     that term must be construed consistent with its use in the

9     patent and its plain and ordinary meaning.  That's the

10     dispute.

11            The claim language becomes relevant, Your Honor,

12     only because Mr. DiMatteo is suggesting to Your Honor that

13     there is a claim differentiation argument.  I am going to

14     address that.  Mr. DiMatteo did not say the claim language

15     itself suggests a particular construction.  He simply said

16     differentiation precludes my construction.

17            So this is Figure 2.

18            I want to turn for a moment to the foreign

19     prosecution.  If we can go to the next slide, the one after

20     that, we are relying, Your Honor, on -- I am skipping a few

21     slides because I want to first address Your Honor's

22     skepticism.

23            THE COURT:  Okay.

24            MR. KREVITT:  The Federal Circuit has said, Your

25     Honor, repeatedly, and we cite one case, Starhome cites

```
 1          another, which I am going to address, has said repeatedly

 2          that foreign prosecutions can be relevant.  In fact, in the

 3          Gillette case that we cite to Your Honor on these slides and

 4          in our brief, Chief Judge Rader, then just Judge Rader,

 5          considered the European prosecution, and found that the

 6          blatant admissions -- that is a quote -- the blatant

 7          admissions by the same party before the EPO on an

 8          identical -- near identical claim, it wasn't identical --

 9          near identical claim -- clearly supports the Court's

10          holding.

11                    Repeatedly, Your Honor, the Federal Circuit

12          considers foreign prosecution.

13                    THE COURT:  But you stated, if I understood

14          correctly, at the time, a few sentences ago, that the

15          Federal Circuit has held that the trial judge "must"

16          consider.

17                    MR. KREVITT:  Your Honor, the point I am making

18          simply is, if there is a contrary statement, given that the

19          Federal Circuit repeatedly considers foreign prosecution.

20          And the times in which it has suggested some caution, I am

21          going to address in a moment, relate to a different issue

22          entirely.  Given that the Federal Circuit has repeatedly,

23          consistently, including in the cases cited by Starhome,

24          considered foreign prosecution as relevant, that law

25          suggests that it is appropriate for a District Court to
```

1    consider the foreign prosecution.

2              THE COURT:  Appropriate; not a requirement.

3              MR. KREVITT:  That's fair, Your Honor.  I

4    apologize if I suggested more than that.  I am simply

5    suggesting that under the case law it's appropriate for Your

6    Honor to consider it, particularly when it is directly

7    inconsistent with a claim construction being offered here.

8              THE COURT:  I guess context matters.

9              MR. KREVITT:  That is exactly right, Your Honor.

10             THE COURT:  I get your point.

11             MR. KREVITT:  I appreciate that clarification.

12   I do want to say one thing before we get down bogged down on

13   the foreign prosecution.  Hopefully it will be very clear

14   from the plain and ordinary meaning, every single dictionary

15   at the time, the specification, every single embodiment in

16   this patent, that we don't need the foreign prosecution.  I

17   am simply going to now offer the foreign prosecution to show

18   that at the time that Starhome was prosecuting these

19   patents, at the exact same time, prosecuting the identical

20   patent in Europe, they took a position directly contrary to

21   the position here.

22             I don't need it, Your Honor.  I want to be

23   clear.  I don't want to carry a burden that I don't need

24   with the foreign prosecution.

25             It is our contention, Your Honor, that the Court

should consider the foreign prosecution.  In Starhome's

brief, they cite a case, the AIA case, that suggests a

District Court should exercise some caution in considering

foreign prosecution.  Mr. DiMatteo repeated that to the

Court here this morning.

What the Federal Circuit has said is that there

are different laws in Europe, obviously, different questions

as to patentability, and that the Court needs to be real

careful before it says, well, the patent was found invalid

there, so we are going to apply that here, or that is

invalidating prior art, because there are different laws.

There is no case, none, that says a District Court should

exercise caution when applying a description of an

inventor's invention that is contrary to a point that's

being offered to a District Court.

So we go back to the foreign prosecution -- I

will hopefully do this quickly.  During prosecution -- and

Your Honor has the whole copy, Mr. DiMatteo showed it, we

just got a snippet -- Starhome took a position directly

contrary, that a gateway connects networks.  And we have a

portion here, there is no gateway within the meaning of the

present application -- they are distinguishing prior art,

excuse me -- within the meaning of the present application

as identical to patents we are talking about here today,

because no access to another network is even hinted at.

1    Contrary to the examiner's assertion, the SCP is not a

2    gateway within the meaning of the present application

3    because a gateway provides access to an external environment

4    beyond the immediate network.

5         If we go to the next slide, Your Honor, to the

6    extent there is any question about this, the applicant,

7    Starhome, went on to say, the examiner is referred

8    specifically to Page 4, Lines 19 and 20 of the present

9    application, where the term intelligent gateway is defined

10   in this way.

11        Not just described, "defined" in this way.

12        So Starhome is telling the European Patent

13   Office how it defines the term gateway.  And this gets a

14   little busy, I confess, this slide.  But at the bottom left,

15   Your Honor, Page 4, Lines 19 to 20, this is on Slide 21

16   before Your Honor, and this definition of gateway, which

17   Starhome itself characterizes as a definition, says, the

18   system providing these services is based upon a

19   configuration comprising a global packet switch network,

20   connecting mobile networks, via intelligent gateways.

21        That is from the European application.  That

22   language may sound familiar to Your Honor, because I read it

23   a few moments ago.  The identical definition, verbatim, word

24   for word, appears in Starhome's patents.  And that's at the

25   bottom right, Your Honor.  That is the definition of the

1    invention.  That was the description of the present

2    invention that I described earlier.  Intelligent gateway

3    connects multiple networks.

4              If we go on to the next slide, I have addressed

5    this, Your Honor, I had intended to do this second, this is

6    the question of whether the Court should consider this.  We

7    have discussed that.  Second, in Starhome's brief, Starhome

8    tries to explain away what happened during prosecution, it

9    is not really what Roamware says happened.

10             I submit Your Honor can read it, will read it

11   and will make up the Court's mind, and we don't need to

12   spend a lot of time on it.  I would simply point this out.

13   In Starhome's brief, this is a quote, they explain the

14   applicant's statement by quoting in this way.  Quote:  "A

15   gateway provides access to an external network beyond the

16   immediate network by knowing about the environment beyond

17   the local network."

18             Mr. DiMatteo said something very similar.  It

19   doesn't have to connect to a network.  It just has to have

20   information about the other network.  That is not what the

21   foreign application says.  Again, I submit to Your Honor,

22   you can read it, how Starhome gets there -- and we showed

23   this -- is they literally pluck two sentence fragments from

24   different paragraphs on different pages and string them

25   together in one sentence and characterize it as a quote.

1              That you see at Starhome reply brief F-5.  Only

2      by doing that, by cherry-picking something from Page 2 and

3      combining it with something from Page 3, sentence fragments,

4      can you possibly make the argument that Starhome is making

5      today.  Applicants' actual statements, which we have

6      discussed, which Your Honor has, could not be clearer.  They

7      are described as a definition.  They make very clear that

8      the gateway must connect two networks.

9              So what is left is what Your Honor not

10     unreasonably asked about, the claim language.  The claim

11     again, Your Honor, does not answer the question as to what

12     an intelligent gateway is, and neither party says it does.

13     Mr. DiMatteo again is suggesting to the Court that claim

14     differentiation says that it can't be what I am representing

15     to the Court.  And that is because some of the claims add a

16     packet switch network.  So some claims just claim an

17     intelligent gateway.  And I put an example up here.  This is

18     actually not even an asserted claim.  But other claims add a

19     packet switch network and then say the intelligent gateway

20     is connected to that packet switch network.  Their

21     suggestion is that in the claims where it does not say that

22     the intelligent gateway is connected to a packet switch

23     network, then those claims, it need not be connected to

24     another network.

25              Your Honor knows the law better than anyone in

1    this room and knows that that does not work.  This claim

2    adds a new element, a packet switch network.  The packet

3    switch network is not required in the claims in which it

4    does not appear, obviously.

5             In the claims in which it does appear, it is a

6    new element.  In the claims they go on to say how the

7    intelligent gateway will be connected to that packet switch

8    network.  It does not change the plain and ordinary meaning

9    of the term intelligent gateway as requiring connection

10   between two networks.  It could just be a different kind of

11   network altogether.  It doesn't have to be a packet switch

12   network.  These claims add a particular kind of network to

13   which the intelligent gateway also will be attached.  That

14   is what these claims are.  That is why there is no claim

15   differentiation, as a matter of law, it adds a new element,

16   and then simply describes how that new element is connected

17   to the intelligent gateway.

18             That is the claim differentiation argument.

19             That is what we have on intelligent gateway.

20             Obviously, before moving on, I am happy to

21   address any questions that the Court has on intelligent

22   gateway, if any.

23             THE COURT:  No.  I think you have answered any.

24             MR. KREVITT:  Routing center, Your Honor.  A few

25   things happened during Mr. DiMatteo's presentation that I

1     think are interesting and will narrow the dispute.

2                First, I want to start with what Mr. DiMatteo

3     said last.  The chief dispute between the parties has always

4     been, until last night, has always been whether a routing

5     center of Claim 10 is limited to a mobile switch center.

6     It's a simple question.

7                Mr. DiMatteo candidly conceded today that there

8     is nothing in the claims that would suggest that.  When you

9     look at Claim 10, you could not possibly conclude that that

10    claim is limited to a mobile switch center.  The term

11    doesn't appear in the claim.  There is nothing in the claim

12    that could possibly suggest that.  Of course, that's

13    correct.

14               So what did we do?

15               Plaintiffs have urged this Court to construe the

16    term as limited to a mobile switch center.  They admit the

17    claim itself doesn't require it, but for reasons Mr.

18    DiMatteo explained and I will address, they believe

19    nonetheless the Court should limit it to a mobile switch

20    center.  For the issue to be joined, for there to not be

21    ships passing in the night, as so often happens in claim

22    construction, we added at the end of our construction

23    "including but not limited to a mobile switch center."  We

24    wanted to make clear that we are not saying that that

25    element couldn't be satisfied by a mobile switch center.  We

1    are simply saying it is not limited to a mobile switch

2    center.

3            Mr. DiMatteo stood here and told you that's

4    improper, it's like saying it's an apple but it's not an

5    apple or something.

6            The only thing we were saying, to compare apples

7    to apples, is, it is an apple, it could include a Fuji

8    apple, but it is not limited to a Fuji apple.  That is the

9    only question before the Court.  Is a routing center of

10   Claim 10, which does not contain the word mobile switch

11   center, limited to mobile switch center?

12           I have to pause, though, Your Honor, because, as

13   Mr. DiMatteo mentioned, last night, they made an addition,

14   and we inserted that in plaintiff's construction -- we have

15   had, obviously, no opportunity to brief the issue to the

16   Court.  We considered it our obligation nonetheless to

17   prepare to discuss the issue.  And that's bracketed under

18   Plaintiff's Construction.

19           So their construction had said, just as ours

20   says, that the routing center routes dialing sequences.

21   They have now changed that to the routing center routes

22   calls with dialing sequences.  So we now have two issues

23   that the Court is confronted with.  The first is the one

24   that the parties briefed.  Is a routing center limited to a

25   mobile switch center?  Are they synonymous?

1          The second issue which we have to address is,

2     does the routing center of Claim 10 route calls or does it

3     route dialing sequences?  That is the new issue that has

4     been presented by the revision to Starhome's claim

5     construction.

6          Starhome characterized that in the e-mail they

7     sent last night as a small change.  Mr. DiMatteo

8     characterized it that way to Your Honor this morning.  It is

9     no small change, as will be very clear to Your Honor.  It is

10    quite a significant change.

11         So let's look at that issue first, because I

12    think we can dispense with that one more easily.

13         So does a routing center route calls or does a

14    routing center route dialing sequences?  That is the

15    question.  The claim answers this one clearly, directly,

16    unequivocally.  The highlighted portion is the claim element

17    that we are talking about, Your Honor.  A routing center in

18    said first mobile telephone network, said routing center

19    adapted to route said dialing sequence.

20         It is hard to see how that could be clearer,

21    that the routing center routes dialing sequence.  It does

22    not route calls.  The claim says absolutely nothing about

23    routing calls.  It routes dialing sequence.

24         In fact, as we discussed earlier, Mr. DiMatteo

25    did and then I did, Your Honor, with that call flow of

Figure 2, you may recall, when the network gets a call, it could do one of two things.  It can route just the dialing sequence, or it can route the call and the dialing sequence. Everyone agrees on that.

And what Claim 10 is saying, because it's an independent claim, it's starting at the broadest level, is that the routing center routes dialing sequence.  It is right there, Your Honor.  It does not route a call.

Claim differentiation further answers the question.  In Claim 10 we have a routing center that routes dialing sequence.  Claim 13 adds a mobile switch center that is adapted to route a call.  The mobile switch center routes a call.  And it does so in Claim 13.  Nothing does it in Claim 10.  The routing center routes a dialing sequence in Claim 10.  The mobile switch center routes a call in Claim 13.  Again, Your Honor, with respect, I don't think the claims could be clearer on that question.

If we move on to the second issue -- the first issue was, does the routing center route calls or does the routing center route dialing sequences?  And the claim answers that question.

Incidentally, before we move on, Mr. DiMatteo, in describing those two ways of using the system, one is just routing the dialing sequence and the other is routing a call and a dialing sequence, said to Your Honor, So as a

1    consequence, the routing center must be able to do both.

2    That's not true.  That's not how it works.  We have an

3    embodiment that discloses two ways of doing something, and

4    we have an independent claim that refers to routing dialing

5    sequences.  That is because in every case the dialing

6    sequence is routed.  Sometimes a call will also be routed.

7    Sometimes it is not.  So it is very clear that all that is

8    required by Claim 10 is that the dialing sequence be routed

9    by the routing center.

10            That is first issue, does the routing center

11   route calls or dialing sequence?  And the claims answer that

12   question clearly.

13            The second question, Your Honor, is the question

14   that was the subject of most of Mr. DiMatteo's presentation

15   and is the subject of the briefing that has been presented

16   to Your Honor.  That is, is a routing center of Claim 10

17   limited to a mobile switch center?  Mr. DiMatteo was very

18   candid in another area in ways that I think answered this

19   question clearly.  He explained that the routing center may

20   be the same as the mobile switch center.  And I wrote down

21   each one of his descriptions.  It might be a slight

22   variation.  It might be bigger or broader, but not by much.

23   We don't know.

24            Mr. DiMatteo said twice, We don't know.

25            And we don't.  What we do know is that the

1   routing center of Claim 10 is not limited to a mobile switch

2   center.  There is nothing in the claim that would suggest

3   that it is.

4          As Your Honor is well aware from these

5   discussions, mobile switch center is described in the

6   patents, in the preferred embodiments, true.  No dispute.

7          If you go back, it is described in the preferred

8   embodiments.  As the Court knows very, very well, though,

9   you do not limit claims to the preferred embodiment absent a

10  clear, unequivocal, unambiguous reason to do so.  None

11  exists.  None has been suggested.  So mobile switch center

12  is an embodiment.  The claim is routing center.  It cannot

13  be limited to a mobile switch center.  Just as a matter of

14  claim construction, it does not work.

15         If we go on, it's demonstrated by the other

16  claims in the patents, Your Honor.  These patents use

17  "routing center" in some claims, Claim 10, for example, the

18  claim on which we are focused, and "mobile switch center" in

19  other claims.  These claims have different claim meaning.

20  The law is clear, different claim terms are presumed to have

21  different claim scope, different meaning.  In the same

22  patent, we have routing center in some claims, mobile switch

23  center in other claims.  They cannot be synonymous.

24         We have, Your Honor, the two different terms in

25  the same claim.  Routing center and mobile switch center

1    both appear in numerous claims together.  They cannot, as a

2    matter of law, therefore, be considered synonymous.

3              We move on.  Here is the real point, I think,

4    Your Honor, that answers the question.  It's the prosecution

5    to which Mr. DiMatteo referred.  We do have that here, Your

6    Honor, because it's really important.  So the original claim

7    is the top callout.  A mobile switch center in said mobile

8    network, said mobile switch center adapted to do things.

9              The original claim that we are talking about

10   claimed a mobile switch center.  That was in the original

11   claim.  The very limitation that Starhome is seeking to have

12   Your Honor add was in the original claim.

13             The applicants during prosecution amended the

14   claim.  They eliminated mobile switch center.  That's not

15   our creation, Your Honor.  That is right out of the

16   application.  They eliminated mobile switch center and they

17   added routing center.  They are asking the Court to do

18   exactly the opposite, to reverse that.

19             If we go to the next slide, this probably was

20   unnecessary.  But we put on the right what Starhome's

21   current construction would do.  You can see, it is literally

22   a reversal of what they did during prosecution.  Routing

23   center was added.  Mobile switch center was eliminated.

24   They are asking the Court to literally undo that and put

25   mobile switch center back in Claim 10 and eliminate routing

1    center.  Or, if you go back, at least limit routing center

2    to mobile switch center.

3            We have one case, Your Honor, there are many,

4    that we cited at the bottom of Slide 33.  This, with

5    respect, is a quote from the case as opposed to me advising

6    the Court what it is permitted to do.  The quote is out of

7    the Federal Circuit:  Courts are not permitted to read back

8    into the claim limitations which were originally there and

9    were removed during prosecution of the application through

10   the Patent Office.

11           That just makes sense.  There is a fairness

12   question.  There is a notice question.  They changed the

13   claim.  They can't reasonably ask Your Honor to change it

14   back.

15           The change that was made, Your Honor, in the

16   September 22, 2004 amendment to Claim 10 to which I referred

17   a moment ago where they changed mobile switch center to

18   routing center.  At the exact same time, in the exact same

19   amendment, they added other claims and included mobile

20   switch center.  So you have Starhome prosecuting one patent

21   and revising claims to take out mobile switch center and put

22   in routing center and to file new claims that are limited to

23   mobile switch center.

24           You can imagine, Your Honor, if I stood here as

25   a defendant and asked Your Honor to limit the claims to

1    mobile switch center because I didn't have one, for example,

2    with respect, it would be a laughable point.  They changed

3    it to remove mobile switch center.  I would not have any

4    standing to suggest to Your Honor, well, let's ignore the

5    amendment and go back to how they originally had it.

6              That doesn't work.  You see that they were

7    prosecuting claims at the same time that had those two

8    different terms.

9              Routing center is broader.  It is not limited to

10   mobile switch center.  Mr. DiMatteo said he does not know

11   why the change was made.  I think we could guess, it was

12   made to broaden the claim term.  That's what people do every

13   single day.

14             We have this slide, Your Honor, it is described

15   in our briefing, there are other types of devices, network

16   elements, that would satisfy the routing center element that

17   are not mobile switch centers.  Those would be covered by

18   the patent, those would, if we were in an infringement

19   context, be infringing at least that element.

20             Unless the Court is interested, I won't take you

21   through those elements.  There they are.  There is no

22   dispute as to them.  One is described in the patent, by the

23   way.  These are elements of which Starhome is aware.  One is

24   described in the patent.  Another is described in the

25   prosecution.  So these are both network elements of which

1    Starhome was aware during the prosecution of the claims.

2              At one point in the briefing, although not

3    today, so I won't spend a lot of time on it, Starhome

4    suggests that during prosecution Starhome distinguished

5    prior art on the grounds that it didn't have a mobile switch

6    center and therefore that shows they were thinking about

7    this claim as limited to a mobile switch center.  It's

8    wrong.

9              The rejection was to the original claim that did

10   have a mobile switch center.  The examiner said, this prior

11   art shows a mobile switch center.  Starhome simply responded

12   and said, no, it doesn't.  It doesn't have a mobile switch

13   center.  Obviously, that is not an admission with respect to

14   the claim scope.

15             So routing center cannot be limited to mobile

16   switch center.

17             Now, Mr. DiMatteo said to the Court that we are

18   asking for a broader construction of routing center because

19   we have got some prior art, some secret prior art that we

20   have not disclosed.  That's not true.  We have disclosed the

21   prior art of which we are aware.  We will continue to do so.

22   That is not true.

23             Mr. DiMatteo, I think, knows why this issue is

24   so important.  And that's because of the next claim.  I am

25   going to now walk you through that.

1            Mr. DiMatteo put these terms together, routing

2    center and mobile switch center.  Those were all addressed

3    together.  They are, in fact, Your Honor -- Your Honor may

4    not be aware of this -- they are different claim terms that

5    appear in different claims.  I explained that.  Claim 10 has

6    routing center.  Claim 13 has mobile switch center.  But

7    Claim 13 said mobile switch center.  There is no antecedent

8    basis for that term.  I am going to explain that to the

9    Court.  Obviously, the Court is familiar with that concept.

10   I am going to explain why Claim 13 lacks an antecedent

11   basis.  There is no dispute on that.  Just as a threshold

12   matter, Claim 13 at the bottom right says said mobile switch

13   center.  It depends from Claim 10.  Claim 10 is the routing

14   center claim.  It does not have the term mobile switch

15   center.

16           So although this wasn't explained to the Court,

17   if Starhome can get Claim 10 synonymous, the routing center

18   of Claim 10 synonymous with mobile switch center, all of a

19   sudden we might have some antecedent basis for Claim 13.

20   That is not how it works.

21           Claim 10 is a different element, routing center.

22   Claim 13, which was not changed during prosecution, there is

23   no antecedent for said mobile switch center.  It cannot, I

24   submit, under the case law, and I will explain this -- be

25   corrected by the Court, that that claim as a consequence

1    lacks antecedent basis.  That is the game, Your Honor.  That

2    is why Starhome wants routing center to be synonymous with

3    mobile switch center.

4            They stood here and told you, it might be a

5    little broader, we don't know.  We don't know why the change

6    was made.  But, come on, it should be limited essentially to

7    mobile switch center.  And that's why.  Because if they can

8    get that, which they can't, but if they can get that, then

9    maybe there is some antecedent basis for Claim 13.

10           Let's talk about Claim 13, which Mr. DiMatteo

11   did not address in this context.

12           If we go to the next slide.  Starhome, this is

13   what I was saying, seeks to cure the lack of antecedent

14   basis for said mobile switch center of Claim 13 by defining

15   it.  There is a circularity here, Your Honor, that will be

16   very clear in a moment.  They define said mobile switch

17   center of Claim 13 as the routing center of Claim 10.  They

18   need to marry these terms.  They don't care what Your Honor

19   does.  You can call them both routing center.  You can call

20   them both mobile switch center.  They don't care.

21           What they need is those to be the same, because

22   then they have got antecedent basis for Claim 13.

23           If you look at their constructions, Your Honor,

24   to state them, we respectfully submit, demonstrates that

25   they make no sense.

1              For Claim 10, they tell you that the routing

2    center means mobile switch center.  We talked about that a

3    few moments ago.  But for Claim 13, they tell you that

4    mobile switch center means the routing center of Claim 10.

5    Take whichever one works for them, Your Honor, because

6    again, they just need the terms to be the same.  It doesn't

7    work that way.  Claim 13 is a routing center.  It performs

8    some functions -- excuse me.  Claim 10 is a routing center.

9    It performs some functions.  Claim 13 is an entirely

10   different element, mobile switch center, and it performs

11   different functions.

12             Here, Your Honor, is why the small change that

13   Mr. DiMatteo described, that they sent us last night, the

14   small change, is so significant.  Because remember, the

15   routing center of Claim 10 routes dialing sequences.  It

16   does not route calls.  The claim itself makes that clear.  I

17   hope I demonstrated that to the Court.  The claim itself

18   could not clearer.  It routes dialing sequences, not calls.

19             Claim 13, if we go back to Claim 13, so that I

20   can be clear, right there at the bottom, Your Honor, you

21   will see that the mobile switch center routes calls.

22   Different functions.  We are not just calling the same

23   element a different name.  Claim 10, we have a routing

24   center that does something, it routes dialing sequences.

25   Claim 13, we have a mobile switch center that does something

1    entirely different.  It routes calls.

2              How do they square that?  They square that by

3    changing the function of Claim 10.  If we go back to the

4    first slide that has our constructions of Claim 10 --

5    that's okay.  I am skipping around.  It's not your fault.

6              This is Slide 27.

7              So here again, Your Honor, what they are trying

8    to do is sand away all these differences, so that they can

9    marry these elements.  So, remember, Claim 10, the claim

10   itself, is a routing center to route dialing sequences.

11   Claim 13, mobile switch center to route calls.

12             So what did they suggest last night?  What is

13   the small change that they suggest to the Court today?

14             Let's define routing center of Claim 10, the

15   thing that routes really only dialing sequences, let's say

16   that routes calls, because if that routes calls, well, the

17   mobile switch center also routes calls, now we have got the

18   same thing doing the same thing, so we are all set for

19   antecedent basis.

20             That small change, Your Honor, is to deal with

21   the fact that Claim 10 has one element that does one thing

22   and Claim 13 has an entirely different element is that does

23   an entirely different thing.  That is what the small change

24   is all about.

25             If we go back to Claim 13 and move on -- that's

1    what we have here, Your Honor, about halfway through, the

2    elements are not synonymous because they require different

3    functions.  And this now, at the risk of being repetitive,

4    routing center routes dialing sequences to the intelligent

5    gateway.  And the mobile switch center routes calls to a

6    destination number.  By the way, they perform a different

7    function with a different object.  The routing center routes

8    the dialing sequence to the gateway.  The mobile switch

9    center routes the call to the destination number.

10                If we go to the next slide.  Let's talk about

11   antecedent basis.  We have now set that up, I hope.  Can the

12   antecedent basis be corrected?  There clearly is an absence

13   of antecedent basis in these claims.

14                The courts have said, Your Honor, the Federal

15   Circuit has said that an antecedent basis may be corrected

16   by the District Court only, and that's -- we put it on two

17   lines, Your Honor, to break that up for ease -- that is a

18   quote from the "only" to the period at the end of claims.

19   Only if the correction is not subject to reasonable debate

20   based on consideration of the claim language in the spec

21   and, two, the prosecution history does not suggest a

22   different interpretation of the claims.

23                We respectfully submit to Your Honor that

24   neither requirement is satisfied here, not close.

25                The correction, of course, is subject to

1    reasonable debate given the patent's use of these different

2    terms to perform different functions throughout.   They

3    appear in different claims.   There can be no question that

4    there is at least reasonable debate.   And equally important,

5    Your Honor, the amendments made during prosecution -- I know

6    we have covered a lot of ground since we had the prosecution

7    up, but, remember, they changed -- the amendments made

8    during prosecution confirm that the term routing center was

9    intended to have a different meaning than mobile switch

10   center.

11            You can't confirm that any more than when you

12   take out one and replace it with another.

13            If they are not intended to have different

14   meaning, nobody takes that step.

15            I didn't know what Starhome intended in its

16   presentation today.   So we looked at the only case, they

17   cite one case, Your Honor, for antecedent basis in their

18   brief.   It is an unreported case.   In that case, there was

19   only one possible understanding.   The first term said upper

20   seating area, and then it said below, said seating surface.

21   There was never another seating anything.   There was no

22   dispute as to what was claimed there.

23            That would have satisfied both of these two

24   requirements.   But that's what that case -- that is out of

25   Starhome's brief, the unreported case.

1            So that's what we have on routing center and

2      mobile switch center.  They are different terms.

3            And those are the issues relating to both those

4      terms.

5            THE COURT:  All right.  Thank you, counsel.

6            Let's get a reply.

7            MR. DiMATTEO:  I will be very brief.  I will try

8      to be brief.

9            Concerning intelligent gateway, the defendants

10     make three arguments, as anticipated.  Their first argument

11     to Your Honor is the specification can only be read one way,

12     that the only invention disclosed is one where the

13     intelligent gateway is coupled both to the mobile switch

14     center and a packet switch network, these two separate

15     networks that the specification does talk about.  But they

16     want only the invention disclosed is that.

17            The Federal Circuit is littered with denials of

18     that approach and is very cautious.  I think I can count on

19     only one hand, on three fingers, the number of times that

20     the Federal Circuit has accepted that defense.  And it's

21     only in exceptional cases where the specification is very

22     clear that their invention is only this and it's not that.

23     The Boston Scientific/SciMed case, the catheter case, is the

24     classic example of that.  That is the rare event.

25            What is clear in this case is that this Court

1    cannot apply that law to this specification and these claims

2    because this specification doesn't say that the only

3    invention we have is an intelligent gateway that's coupled

4    to a mobile network and a packet switch network.

5              Why?  How do we know that?  We can take a look

6    at the specification itself.  We can take a look at Figure

7    1, which Roamware talks about, Column 2, Lines 42 to 32

8    (sic).  That is No. 46.  This is Figure 1.  Defendants' 22.

9              A general schematic illustration of a system for

10   providing roaming services, according to some embodiments of

11   the present invention -- not all, not the only, some

12   embodiments, it may comprise the VPL -- I hate the industry

13   acronyms -- the visited network 30 may be coupled to a

14   global packet switch network 22.  It doesn't say it must.

15   It doesn't say our invention is an intelligent gateway

16   coupled.  It says it may.

17             Now, when I talked about Figure 2, which goes

18   through the elements which are necessary for the claims --

19   can you show me 47.

20             The specification is clear, and I am reading on

21   the right, Your Honor, this is Column 3, Lines 23 to 27,

22   Reference is now made to Figure 2, which illustrates the

23   call flow from a roamer of Figure 1 according to some

24   embodiments of the present invention.  Some embodiments.

25   This is an embodiment where the intelligent gateway does not

 1    need to be connected to any other network or any packet

 2    network.

 3              The entire invention is being described as an

 4    intelligent gateway communicating only with the mobile

 5    network.

 6              That is the embodiment described in Figure 2.

 7    That's the embodiment claimed in the patents that we are

 8    asserting in this case.

 9              The defendants then turn to the definition of

10    gateway, which we thought they would.  And again, if I can

11    have 33.  In their opening brief, It's universally

12    understood the five necessary translations for two different

13    networks.  And they cite to Tanenbaum, Necessary

14    Translation.  That's what a gateway does.  It translates

15    something that one network doesn't understand to something

16    it will understand.  A gateway is that translating function.

17              Go back to Figure 2, please.

18              As we described over and over, the intelligent

19    gateway translates a dialing sequence that this visiting

20    network doesn't understand into a sequence that the network

21    does understand.

22              That's the translating function.  The two

23    networks, conceptually, Your Honor, it's this roamer, like

24    me in Germany, is using a dialing sequence of a foreign

25    network that the visiting network doesn't understand.  And

1     the intelligent gateway translates those foreign dialing

2     sequences into one that it would understand.

3             So that's the gateway function.  This

4     intelligent gateway has to translate the dialing sequence of

5     a roamer that is not recognized in Germany into a language

6     that the roaming network can translate.  That's exactly what

7     the claims tell us the intelligent gateway does.

8             Can we have No. 30.

9             On the left here is Claim 10.  It says that the

10    intelligent gateway is adapted to translate a dialing

11    sequence, and then with knowledge of the home network, into

12    the first visited mobile network.

13            So the two networks are the home network, in

14    other words, the dialing that I use at home, and the foreign

15    network that I am trying to complete my call in.  And the

16    gateway is literally translating, performing its translating

17    function by translating my dialing sequences into a sequence

18    that my visiting network can recognize.

19            THE COURT:  So you and the defendant, as

20    asserted by counsel, agree as to the understanding, the

21    meaning of the term gateway.

22            MR. DiMATTEO:  Yes.  The term gateway has to

23    provide a translation function.

24            THE COURT:  It's the identification of the

25    different networks that are being connected where you

1    disagree.

2              MR. DiMATTEO:  Not only does it have to

3    translate.  It has to be physically connected to two

4    different networks.

5              THE COURT:  Yes.  The translation doesn't seem

6    to be so much the issue here.  It's the latter.

7              MR. DiMATTEO:  Right.  They are trying to even

8    narrow further, a gateway not only has to be a translator

9    between two different network protocols, or network dialing

10   sequence, it must be physically coupled to two different

11   networks.

12             THE COURT:  Well, the definitions that you

13   appear to agree upon, at least as outlined in defendants'

14   presentation from the various dictionaries cited, would

15   suggest two different networks.  You say one is the home

16   network, and the foreign network.  They say, no, don't look

17   at the home network.  It must be some other network, I

18   think.

19             MR. DiMATTEO:  Let me be clear on the point.

20   There are various layers of definitions.

21             THE COURT:  Is that right?  Am I

22   mischaracterizing?  I am asking defense counsel.

23             MR. KREVITT:  I think you have it right, Your

24   Honor.  I would probably like an opportunity to make just --

25             THE COURT:  No, I am not going to give you an

```
 1    opportunity to make any further points.  Do I have it right

 2    in terms of my understanding of where the difference lies?

 3                   MR. KREVITT:  Then I must --

 4                   THE COURT:  Make it quick, counsel.

 5                   MR. KREVITT:  Very quickly.  I will do it from

 6    here.

 7                   Mr. DiMatteo took a portion of our brief that

 8    says translation.  We shouldn't be talking about lawyer

 9    argument in the briefs.  The definitions make very clear

10    that the gateway, that the term gateway must connect two

11    networks.  Otherwise, it could have simply said an

12    intelligent computer.  A gateway must connect two networks.

13                   THE COURT:  I get that, counsel.  My question to

14    you is where does the difference lie as to the

15    identification of the networks that are being connected?

16                   MR. KREVITT:  No, Your Honor.  It is Starhome's

17    view that a gateway can be connected to only one network.

18                   THE COURT:  No, I don't think that is what Mr.

19    DiMatteo just said.  He said that the home phone is its own

20    network.  That is a network.  And it's connected to the

21    foreign network.  That's what he just said.  That's what I

22    understand the plaintiff's position to be.

23                   MR. KREVITT:  I understand, Your Honor.  That is

24    different than what has ever been described in the briefs.

25                   THE COURT:  Were you listening to what he just
```

1    said?

2                    MR. KREVITT:  I did, Your Honor.  I didn't

3    understand it that way.  They are now saying that the --

4                    THE COURT:  Have I correctly characterized your

5    position?

6                    MR. DiMATTEO:  Yes, Your Honor.  Basically, when

7    I am in Germany with my cellphone, I am using a dialing

8    sequence of my home network.

9                    THE COURT:  That's what I picked up on, counsel.

10   Go ahead.

11                   MR. KREVITT:  The gateway must sit between two

12   networks.  That is our contention, Your Honor.  I believe --

13   and, of course, Mr. DiMatteo will speak for Starhome -- it

14   is their contention that although there may be two networks,

15   his phone may be a network, that the gateway need not sit

16   between two networks.  The term gateway in every definition,

17   Your Honor, requires it to connect, the gateway, to connect

18   two networks.  Every definition says it, Your Honor.  The

19   patent says it every single time.  Every figure shows it.

20   The gateway must connect two networks.  Every instance in

21   which the specification describes it, it describes it that

22   way.  Every single figure that shows the system shows it

23   that way.  Every single definition we showed Your Honor

24   shows that.  The gateway must sit between and connect two

25   networks.

```
 1                    He is talking about his phone network, home

 2      network, there may be all kinds of networks.  The dispute

 3      between the parties is whether the gateway must sit between

 4      and connect two networks, or whether it could -- and they

 5      keep showing you Figure 2.  If you look at Figure 2 --

 6                    THE COURT:  Is it the case that you really don't

 7      agree as to the definition of gateway?  Because I thought

 8      there was agreement, at least I thought for a moment, and I

 9      am looking at your Slide 11, where you have set forth three

10      dictionary definitions.  Both counsel can take a look at

11      that.  Maybe we could put it up, and see for a moment if

12      there is really agreement, because I think you are saying

13      something different than what is being asserted here.

14                    Take a look at that, Mr. DiMatteo.

15                    MR. DiMATTEO:  I have, Your Honor.

16                    THE COURT:  Do you agree that these dictionaries

17      correctly set out what is understood by a POSA to be the

18      meaning of gateway?

19                    MR. DiMATTEO:  These dictionary definitions

20      demonstrate that there are a lot of different flavors of

21      gateways.  I want to direct your attention to the Tanenbaum

22      reference.  This is very eloquent when you think about it.

23      People connected to one network often want to communicate

24      with people attached to a different one.  This desire

25      requires connecting two different and frequently
```

1    incompatible networks, sometimes by using machines called

2    gateways to make the connection and provide the necessary

3    translation both in terms of hardware and software.

4              Okay.  So here I have a person, me, in Germany,

5    trying to communicate using my home network dialing sequence

6    with --

7              THE COURT:  Here is the thing.  Forgive me for

8    interrupting.  I think -- and counsel can speak for

9    himself -- that the problem that, one of the problems he has

10   with Figure 2 is that it doesn't show your home network

11   39 -- I am sorry, it doesn't show the intelligent gateway 7

12   standing between your home network 39 and the, I guess

13   the --

14             MR. DiMATTEO:  Can we go back to Figure 2.

15             THE COURT:  -- and another network.

16             MR. KREVITT:  You have got it exactly right.

17   The definition of gateway is it must connect two networks.

18   That's why on Figure 1, the system claim, it shows it

19   connecting two networks.  On Figure 3, the system claims,

20   and system embodiments, it shows it connecting to the packet

21   switch network.  Otherwise, it could have been referred to

22   as an intelligent computer.  If all it was going to do is

23   provide some functionality as described by plaintiffs, it

24   could be called anything.  It is a gateway.

25             THE COURT:  Mr. DiMatteo, could you address that

1       position?

2                   MR. DiMATTEO:  Certainly.  The debate, Your

3       Honor, is over the word network, what networks, what two

4       networks, are we talking about?  The defendants want the two

5       networks to be the mobile switch center and the telephone

6       network and some other network, a packet switch network.

7       The Internet is the classic example.  They want to limit the

8       word gateway to a connection to both those different

9       networks.  That's not what the claim says and that's not

10      what the specification says.

11                  The translation, the gateway function is not

12      between the mobile switch center translating into something

13      for the packet switch network.  The translation is from this

14      roamer trying to use dialing sequences of his home network,

15      the home network dialing sequences trying to communicate

16      with the mobile network dialing sequences.  So the two

17      networks of the gateway, that the gateway is wrestling with,

18      is the dialing sequences recognizing the home network and

19      the switch and dialing sequence recognized by the visiting

20      network.  So the two networks are the two different phone

21      networks, not the Internet and the mobile switch center.

22                  And that's the translation function.  It's

23      saying, look, the gateway has to be -- you can have

24      knowledge, if you look at Claim 10.

25                  THE COURT:  Mr. DiMatteo, I understand, I think,

1    the role of figures in a patent.  But would you tell me,

2    Figures 3 and 1, what is their purpose?

3         MR. DiMATTEO:  Certainly.  All right.  Let me

4    just briefly mention this while it is up here.  The two

5    networks, here, it is the home network and the first mobile

6    network.  That is the two networks that the gateway is

7    translating between.

8         Let's go back to Figure 1.

9         Figure 1, in a preferred embodiment, the

10   intelligent gateway, not only does its translations with the

11   mobile switch center, but has a connection with the packet

12   switch network.

13        THE COURT:  In Figure 1, where is the

14   intelligent gateway?

15        MR. DiMATTEO:  Figure 32.  V.-I/G.  That is what

16   they want to limit it to.  They say, oh, it's got to be

17   connected to both.  But there is no description of, okay, we

18   are going to have to translate something here through this

19   gateway and go out here.  The intelligent gateway, there are

20   embodiments that use the packet switch network.  And I can

21   give the long story for that, if the Court is so inclined.

22   But the problem they are trying to solve doesn't need to be

23   connected to a packet switch network at all.

24        The problem they are trying to solve is

25   translating roaming dialing sequences into a sequence that

1    the visiting network can recognize.

2         THE COURT:  Why does counsel argue -- perhaps

3    you could address this directly -- that the Court needs to

4    be mindful that these are system and method claims and that

5    what Figure 1 addresses is not what Figure 2 is intended to

6    address?  And, of course, we must concern ourselves with the

7    claim language, the spec.

8         MR. DiMATTEO:  Certainly, Your Honor.  The logic

9    to his argument is, there is only one system disclosed, and

10   the only system that is disclosed is connected to both a

11   packet switch network and a mobile network.  And he is

12   wrong, because the specification says there are many

13   different ones involved and it may be coupled to a packet

14   switch network.  So the only way you get there is with a

15   specification that only discloses one system, and that

16   system has to have this element.

17        This is a claim construction argument that's

18   repeatedly rejected by the Federal Circuit.  And certainly,

19   the specification doesn't support it because this

20   specification says it may be coupled.  And the language of

21   the claims are clear that when it wants to be coupled to

22   another network, it's recited as coupled to another network.

23        So the specification doesn't get them there.

24   True, we accept there are embodiments disclosed in which the

25   gateway is connected --

1          THE COURT:  I understand.  I don't think that's

2    his point.  I will give him a chance to speak further.

3          MR. DiMATTEO:  When we come to Figure 2 --

4    actually, show 47, "according to some embodiments of the

5    present invention."

6          So Figure 2 is going to disclose how the

7    invention works, the system, according to some embodiment.

8          THE COURT:  Let's say, as I suggested to

9    counsel, we eliminate the figures altogether --

10          MR. DiMATTEO:  And go to the claims.

11          THE COURT:  -- and rely on the claim language

12    and the specification.

13          MR. DiMATTEO:  I love the claims.

14          THE COURT:  So does the Federal Circuit.

15          MR. DiMATTEO:  Right.  Let's go to the claims.

16    Let's take a look at just Claim 10.  All it says is that the

17    intelligent gateway is associated with a first mobile

18    telephone network.  It doesn't say that the intelligent

19    gateway has to also be attached to another network.  It does

20    tell you that it's translating dialing sequences that would

21    be recognized in the home in the first mobile network.

22    That's the gateway function, the translation.  I have got to

23    translate these dialing sequences.  They are foreign to me.

24    When I am in Germany, my New York dialing sequences are

25    foreign to a German.  So I need a gateway.  I need an

1      intelligent gateway to help me translate this.  But there is

2      nothing about the claims that says, oh, I need to also be

3      connected to another network, a packet switch network.

4      That's the description of Figure 2.

5              Here we are, using the elements, the mobile

6      switch, intelligent gateway, doing the translation, its

7      database, so on and so forth.  And to drive home the point

8      again, when we compare it to Claim 10, Slide 30, the claims

9      tell us coupled to a packet switch network, coupled to a

10     first mobile network.

11             So here now I am claiming what we see in Figure

12     1, that embodiment.

13             I don't know if we have Claim 1 with Figure 1

14     available.

15             Here, when I want to claim this embodiment --

16     this is like a picture claim, Your Honor.  I have an

17     intelligent gateway, coupled to a packet switch network, and

18     actually also coupled to other mobile networks, and the

19     intelligent gateway being coupled to a mobile switch center,

20     a first mobile network.  So I am coupled to a first mobile

21     network.  So here I am coupled twice.

22             It is very simple.  There is nothing about the

23     specification that says our invention is an intelligent

24     gateway that's connected to a mobile network and a packet.

25     It's an option.  Some embodiments have it.  Some don't.  It

1    may be.  And the claims are very clear as to the gateway

2    function.  That is the translation.

3              I can address routing center.  Or if you want to

4    hear --

5              THE COURT:  Go ahead on routing center.

6              I will give you the last word, Mr. DiMatteo.

7              MR. DiMATTEO:  I appreciate that.  I will try

8    not to waste that opportunity.

9              THE COURT:  You have the burden.

10              MR. DiMATTEO:  Can I have No. 48, routing

11    center.

12              Intelligent gateway, this whole mischief of

13    routing center and mobile switch came with this one

14    amendment, where it said, a mobile switch center in the

15    first mobile telephone network, and mobile switch --

16              THE COURT:  I get all that.  Why don't you go

17    straight to the heart of his argument of what he contends is

18    the real rationale for wanting the Court to construe the

19    term.

20              MR. DiMATTEO:  On the dependent claim and the

21    antecedent basis issues?

22              THE COURT:  Yes.

23              MR. DiMATTEO:  I didn't know I was that smart.

24              THE COURT:  It's pretty conspiratorial.

25              MR. DiMATTEO:  I am impressed.

1                I made that change because I wanted the Court to

2      understand basically what a switching center is.  It was a

3      mobile switch, and changed to routing.  Truth be told,

4      routing is probably just a switch.  You could say, instead

5      of a mobile switch center, they could have just changed it

6      to switch center.

7                THE COURT:  In your view, what mischief does the

8      defendants' proposed construction make?  Because it includes

9      mobile networks.

10                MR. DiMATTEO:  None, Your Honor.  The question

11      then is -- the patent attorney made this amendment.  When I

12      say we don't know, there is nothing in the written record

13      where either the examiner or the applicant is discussing the

14      term routing center in a context which provides any more

15      clarity other than it's a substitute for mobile switch.  He

16      did not -- perhaps a little sloppy -- he did not carry the

17      amendment through to Claim 13.

18                Can we show Claim 13.

19                All right.  The question before the Court is:

20      What are the consequences when an applicant modifies an

21      adjective on the word center -- here it was mobile switch to

22      routing -- on a dependent claim that still has the other

23      adjective, mobile switch center?

24                Can we actually put Claim 13 and 10 together?

25      Maybe it will make sense.

1              So what's happened here is, if you recall, this

2    said mobile switch center, then it has a dependent claim

3    here where he forgot to -- said change this to said routing

4    center.  Tough question.  What is the consequence of that?

5    And usually the Court is -- well, the Court is allowed to

6    clarify this when you don't have proper antecedent basis if

7    there is enough clarity.  And it is pretty clear between

8    both parties that we agree that a routing center includes a

9    mobile switch center.  So I see no ambiguity in the term

10   routing center to mobile switch center as further adapted to

11   prior art.

12             THE COURT:  Am I to understand that you have no

13   difficulty with any network element that routes dialing

14   sequences including but not limited to a mobile switch

15   center?

16             MR. DiMATTEO:  It has to do dialing sequences

17   and a call.  It basically has to be a switch.  It's not just

18   any switch.  It's a switch in the telephone art that has got

19   to be able to take care of the call and a dialing sequence.

20             THE COURT:  Let me understand.  I want to make

21   sure I am reading the most recent iteration of your

22   position.

23             MR. DiMATTEO:  I have both positions on a single

24   sheet of paper, Your Honor.  I have an extra copy.

25             THE COURT:  I think you handed it up.  Okay.

1          MR. DiMATTEO:  We are saying calls with dialing

2    sequences.  I don't mind any network that routes dialing

3    sequence.  I would want to add calls to their definition.

4    But it's not limited to.  That's the issue that we --

5          THE COURT:  Mr. Krevitt, in the latest

6    submission, as I understand it, there has been an additional

7    change, that is the addition of calls as well as to dialing

8    sequences.

9          It appears, Mr. DiMatteo, you don't have a real

10   issue with the defendants' proposed construction, but not

11   limited to a mobile switch center, you want the word calls,

12   with calls added to dialing sequences.

13         MR. DiMATTEO:  Yes.

14         THE COURT:  You would take issue with that.

15         MR. KREVITT:  Your Honor, the claims preclude

16   it.

17         THE COURT:  Then that is because you believe the

18   claims preclude it.

19         MR. KREVITT:  Yes, Your Honor.

20         MR. DiMATTEO:  Let me address that argument.

21         Can we show, Slide 16, Claim 10.

22         The thrust of the argument is, well, the routing

23   center only does dialing sequences because the rest of the

24   claim says the routing center is adapted to route a dialing

25   sequence.

1           I really don't understand it.

2           But the thrust of our position is, a routing

3  center has to do call in a dialing sequence.  We went

4  through, every call we make has a dialing sequence and a

5  voice attached to it.  A routing center has to be a switch

6  center, has to deal with both.  This invention, though, says

7  okay, I want to adapt this routing center.  It's not saying

8  the routing center --

9           THE COURT:  Aren't there different claims in the

10  patent that deal with these two different functions?

11          MR. DiMATTEO:  There are.  What this claim is

12  capturing, this language, adapted to route said dialing

13  sequence to said intelligent gateway, what that is referring

14  to is, all right, in the prior art, we just had a mobile

15  switch, but now we have got to change it.  We have got to do

16  something with this switch.  We have to adapt it so that

17  it's going to take the dialing sequence that it doesn't

18  recognize and send it over to the intelligent gateway.

19          We have to change what is normally a routing

20  center, which does call and dialing sequence, and we want to

21  adapt it so I can strip off that call -- strip off the

22  dialing sequence, and be able to send that over to the

23  intelligent gateway.  So that's the adapting.  We are going

24  to modify and adapt this routing center so that just the

25  dialing sequence can go to the intelligent gateway.

1                    There is nothing about that that mandates that a

2     routing center only does dialing sequences.

3                    THE COURT:  Isn't that what Claim 10 is devoted

4     to, dialing sequences?

5                    MR. DiMATTEO:  Right.  The intelligent gateway

6     is going to translate them.

7                    THE COURT:  Then Claim 13 says the system of

8     Claim 10 wherein said mobile switch center is further

9     adapted to route a call.

10                   MR. DiMATTEO:  Right.  Let's get the whole thing

11    up.  Do we have Claim 13 and 10 together.

12                   ...wherein the mobile switch center is further

13    adapted to route a call corresponding to said dialing

14    sequence to said destination number.

15                   To be clear -- can we go back to Figure 2 -- the

16    dialing sequence is that translated by the intelligent

17    gateway.  And what that claim is saying is that this mobile

18    switch center now has to be adapted to accept this dialing

19    sequence so that it can route the call.

20                   In simple terms, Claim 10 says, look, you have

21    to adapt it so you can get to Step 2 and transfer the

22    dialing sequence to Box 32.  And Claim 13 further says,

23    okay, you got to adapt it to accept the dialing sequence

24    back.  It's very simple.

25                   THE COURT:  All right.

1              MR. DiMATTEO:  Thank you, Your Honor.

2              THE COURT:  Mr. Krevitt, why don't you address

3    really in as succinct a manner as possible your discussion

4    regarding gateway, and the definitions and whether there is

5    agreement or not, that I had with Mr. DiMatteo.

6              MR. KREVITT:  I will.  Let me try take a step

7    back and address the subject clearly and not reargue

8    everything.

9              Some basic first principles.

10             First, we are not arguing that the claims are

11   limited to embodiments.  All of the discussion about that is

12   just irrelevant.  We are not saying limit the claims to the

13   embodiments.

14             THE COURT:  But, to be fair, Mr. DiMatteo says,

15   in effect, you are.

16             MR. KREVITT:  But we are not.  Let me explain

17   why.

18             THE COURT:  Go ahead.

19             MR. KREVITT:  This is our argument.  We think we

20   are right.  But it's quite simple.  Our argument --

21             THE COURT:  Simple is good.  I don't have a

22   problem with simple.

23             MR. KREVITT:  I think you will find this is

24   simple.

25             The term gateway at that time had a plain and

1    ordinary meaning.  That is in these definitions.  When Mr.

2    DiMatteo stood here for the second time and the first time,

3    he has never disputed these definitions.  I think he said he

4    agreed with them.  Instead he went to my brief and he

5    plucked a sentence written by my articulate colleague, Mr.

6    Roe, and took issue with that.

7              The definitions are clear.  The plain and

8    ordinary meaning of gateway is connecting two networks.

9    That's what a gateway is.  Otherwise, it could be just a

10   computer, a network element.  That is the first point.

11             THE COURT:  Then we got into this discussion, he

12   and I did, about, well, which networks are we talking about?

13             MR. KREVITT:  Right.  That's where the confusion

14   came in, I think perhaps deliberately.  And here is the

15   point.

16             For purposes of this claim construction, it is

17   our position that a gateway must connect two networks.  The

18   Court need not today -- the Court has never been asked --

19   the arguments presented today by Starhome you will find

20   nowhere in their briefs.  They are brand-new.  The Court

21   need not today answer the question as to which networks the

22   gateway sits between, as to which networks the gateway

23   connects.  The question is simply:  What is the meaning of

24   an intelligent gateway?  And that is why I started, Your

25   Honor, and that's why we briefed the question, and that's

1    why there has been confusion.

2              A gateway, the plain and ordinary meaning,

3    that's where we start.  Not the embodiments.  The plain and

4    ordinary meaning of gateway is connect two networks.

5              Now, Your Honor said, again, completely

6    reasonably, let's go to the claims.  And as I tried to

7    explain, so I want to take a quick stab at that, the claims

8    don't answer the question.  If we had a situation where the

9    claims said, a processor that does this and something, we

10   might have, Your Honor may have addressed that very

11   question, given the number of patents cases Your Honor has

12   that deal with processors, what does a processor mean?  You

13   could stare at the claims forever, and the claim would have

14   simply said a processor.  And they would argue it means one

15   thing, and we would argue it means another.  And you would

16   have to look elsewhere.  The claim wouldn't answer the

17   question.

18             We are not running away from the claim.  We are

19   simply saying that every single claim in this case, Your

20   Honor, has the term intelligent gateway.  It's the

21   invention.  And what was an intelligent gateway?  Why did

22   they choose intelligent gateway?  They chose it because they

23   knew the definition of gateway.  It had a plain and ordinary

24   meaning.  That's why I started, Your Honor, after the

25   definitions, with The present invention.

1              Take me there, if you would.

2              The present invention, before Mr. DiMatteo took

3    you to a portion of the specification that began with

4    Reference is now made at Figure 1, that is the portion that

5    Mr. DiMatteo showed you just now.  The paragraph before it

6    doesn't relate to embodiments.  It describes what the

7    invention is, again, consistent with the definition.  It is

8    based upon a configuration comprising a packet switch

9    network connecting mobile networks via intelligent gateway.

10   We are not building in packet switch network to our

11   definition.  We are not building mobile networks versus home

12   network.

13             We are simply saying, with respect to Starhome,

14   unassailable, the term gateway has a plain and ordinary

15   meaning.  It is connecting two networks.

16             Why, then, Your Honor, did I take you through

17   Figure 1 and Figure 3 and the specification if I am not

18   trying to get you to limit the claims to the preferred

19   embodiments?  Here is why.  I was simply demonstrating to

20   Your Honor that in every instance in which the system is

21   described in this patent, not one embodiment, as Mr.

22   DiMatteo said, every single system embodiment that is

23   disclosed -- it is true, the patent says others may also be

24   covered by the claims -- but every single one that is

25   disclosed, that's Figures 1 and Figure 3, disclose the

1    gateway connecting networks, disclose the gateway consistent

2    with the plain and ordinary meaning.

3                So I am not relying on the embodiments, urging

4    the Court to limit the claims to an embodiment.  That is not

5    happening here.

6                What I am asking Your Honor to do is what we

7    think the law requires, which is, if you have a plain and

8    ordinary meaning of a term, we have these definitions,

9    nobody has disputed them, it connects two networks.  We have

10   a plain and ordinary meaning.  Absent some disclaimer,

11   absent a contrary definition, absent a good reason, you

12   adopt the plain and ordinary meaning of the term.  Gateway

13   has a plain and ordinary meaning.  It is why, Your Honor --

14   I won't belabor it -- why I took you to the foreign

15   prosecution, not because again I want to limit to the

16   foreign prosecution, but because they described a gateway

17   completely consistently, defined it with the plain and

18   ordinary meaning.

19               So the whole notion, again, with respect, Your

20   Honor, that we are limiting to an embodiment, it is a red

21   herring.  Gateway has a plain and ordinary meaning.  The

22   patent, from the first word to the last, uses gateway in a

23   manner consistent with the plain and ordinary meaning.

24               That is intelligent gateway.

25               Before moving on, I want to make sure that I am

1    answering Your Honor's questions directly and clearly.

2                THE COURT:  You have answered my question.

3                MR. KREVITT:  The most important thing, of

4    course, from our perspective is that the Court --

5                THE COURT:  Comprehend the arguments that are

6    being made.

7                MR. KREVITT:  Of course.

8                As to routing center, Your Honor, Your Honor

9    asked a few questions about that, the question as to whether

10   Claim 10, the routing center, should require it to also make

11   calls, route calls as opposed to just a dialing sequence,

12   Your Honor understands that argument very, very well.  The

13   claims absolutely preclude that argument.  There can be no

14   reasonable dispute on that question.  The claims set it out.

15               As to whether there is antecedent basis for

16   Claim 13, for the reasons I explained, Claim 10 is broader

17   than Claim 13.  It routes the dialing sequence to the

18   intelligent gateway.  Claim 13 routes the call to a

19   destination number.

20               There is one point I want to make, though,

21   because I think this got lost.

22               Routing center is broader than mobile switch

23   center.  And it can include a mobile switch center.  But

24   there is not perfect overlap, in this respect.

25               You could have a routing center that routes

1    dialing sequences, and you can have a totally different

2    element, a mobile switch center, that then routes the call.

3    They need not even be in the same device when you do have a

4    mobile switch center.  The claims don't require it.

5         For the reasons that we describe, there was

6    other technology that existed and of which the applicants

7    were aware and disclosed that would have performed the

8    functions of a routing center that was not a mobile switch

9    center.

10        The point there, Your Honor, is there simply is

11   no antecedent basis at all for Claim 13, and Claim 10 cannot

12   provide it.  That is what the changes that you are hearing

13   about today, adding calls, for example, are all designed to

14   achieve.  The amendment precludes that when they changed

15   mobile switching center to routing center.

16        THE COURT:  Thank you, Mr. Krevitt.

17        MR. KREVITT:  Thank you, Your Honor.

18        THE COURT:  Mr. DiMatteo, last word.

19        MR. DiMATTEO:  I am afraid counsel for

20   defendants is not being complete in his reference to the

21   specification.

22        We have repeatedly shown you Figure 2, systems

23   providing the services based upon a configuration, blah,

24   blah, blah.  If you look at the paragraph that hangs off of

25   and describes, where the whole detailed description of the

1    present invention is presented, I can show it on the '431

2    patent, because it's real crisp.  It is all in one spot.  In

3    the '487 it is jiggered between two columns.  I am taking

4    the liberty here.

5         It says there are many embodiments -- this is

6    classic open-ended invention description -- may be practiced

7    without specific details.  Other instances, well known

8    procedures, methods, components have not been described.

9    Some embodiments are directed to providing services to

10   roaming subscribers of mobile networks.  So on and so forth.

11        When we get to the penultimate paragraph that

12   counsel for defendants says, systems providing these

13   services based upon a configuration, blah, blah, blah, it's

14   one of many embodiments disclosed.  There is nothing about

15   this specification, and this Court is now very familiar with

16   it, which mandates that a gateway have to be connected to

17   two disparate networks, a mobile network and a packet switch

18   network.

19        And if we look at their definition -- can you

20   show me the competing definitions?  Letter A.

21        All right.  We agree, a network element,

22   intelligent gateway transfers information to and from a

23   mobile network.  You see that ad nauseam, Figure 2's use of

24   the intelligent gateway.  And they want also to transfer

25   information to and from another network external to the

1    mobile network.

2              Nothing about the word gateway that mandates

3    that transferred information, the intelligent gateway, the

4    intelligent gateway of this invention should transfer

5    information to and from another network external to the

6    mobile network.

7              Thank you.

8              THE COURT:  All right, counsel.  I will take it

9    under advisement and endeavor to issue a ruling within 30

10   days.

11             MR. KREVITT:  Your Honor, Your Honor's comments

12   may have answered the question I am about to ask.  We are

13   prepared to address any --

14             THE COURT:  I am not prepared to hear it.

15             MR. KREVITT:  Very well, Your Honor.  Thank you.

16             MR. DiMATTEO:  Thank you for your time, Your

17   Honor.

18             (Counsel respond "Thank you.")

19             (Hearing concluded at 11:50 a.m.)

20                        -   -   -

21   Reporter:  Kevin Maurer

22

23

24

25