IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STARHOME GMBH, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civ. A. No. 10-434 (GMS) |
| | ) |
| AT&T Mobility LLC,<br>ROAMWARE, INC., and<br>T-Mobile USA, INC., | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## ORDER CONSTRUING THE TERMS OF U.S. PATENT NOS. 6,920,487; AND 7,231,431

After having considered the submissions of the parties and hearing oral argument on the matter, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, as used in the asserted claims of U.S. Patent Nos. 6,920,487 (the "'487 patent") and 7,231,431 (the "'431 patent"):

A. **The '487 and the '431 Patents**

1. The term "intelligent gateway" is construed to mean "a network element that transfers information to and from a mobile network and another network external to the mobile network."[1]

2. The term "mobile network" is construed to have its plain and ordinary meaning.[2]

---

[1] Defendants assert that the term "gateway" was a well-known technical term of art in the telecommunications industry when the application for the asserted patents was filed. Therefore, the defendants argue, the term should be construed according to its established meaning at the time, unless the applicants clearly redefined the term. The court agrees. The Institute of Electrical and Electronics Engineers ("IEEE") dictionary defines a "gateway" as: "(1) A functional unit that interconnects a local area network (LAN) with another network having different higher layer protocols. (2) (A) A dedicated computer that attaches to two or more networks and that routes packets from one to the other. (B) In networking, a device that connects two systems that use different protocols." IEEE, 499 (D.I. 71, DEFA59). The court finds that the applicants did not clearly redefine this term, and therefore the established meaning is controlling. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313, 1316-1317 (Fed. Cir. 2005) (en banc); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996).

    3.    The term "said roamer" is construed to mean "said roaming cellular telephony device."[3]

**B.**   **The '487 Patent**

    1.    The term "routing center" is construed to mean "any network element that routes dialing sequences, including but not limited to a mobile switch center."[4]

    2.    The term "said mobile switch center" is construed to mean "a network element that routes calls."[5]

---

[2] The court adopts a construction that is consistent with the plain and ordinary meaning of the term and that gives effect to each term of the claim. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001.))

[3] The court rejects the defendants' arguments that this term is indefinite, or alternatively, that it refers to a subscriber. (D.I. 60 at 4.) Specifically, "said roamer" refers for antecedence to "said roaming mobile device" in claim 1. *See* '431 Patent Col. 9:17-26. Furthermore, this meaning is consistent with the use of "said roamer" throughout the patents-at-issue. *See* '487 Patent Col. 9:16-27 ("a roaming cellular telephony device connected as a visitor . . . said roamer"); *see also id.* at Col. 10:63-64; 11:48 ("a roaming cellular telephony device . . . said roamer") In each instance, preceding claim language unambiguously identifies the roaming object as the roaming mobile device, providing a clear antecedent basis for this term. In view of the foregoing, the court agrees with Starhome's proposed construction. *See Phillips*, 415 F.3d at 1315. ("[T]he specification is highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term." (citing *Vitronics Corp.*, 90 F.3d at 1582)); *see also Comarck Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("while . . . claims are to be interpreted in light of the specification and with view to ascertaining the invention, it does not follow that limitations from the specification may be read into the claims" (internal citation omitted)).

[4] The court rejects Starhome's last-minute change to its proposed construction the night before the *Markman* hearing as contravening the court's standing Orders regarding *Markman* briefing. *See* Transcript of Hearing, dated March 14, 2012 ("Tr.") at 24:14-19. Therefore, the court considers the construction proposed by Starhome set forth in the Amended Joint Claim Construction Chart submitted December 22, 2011. The court rejects Starhome's proposed construction and adopts the defendants' proposed construction as consistent with the specification. The parties agree that a "routing center" is a network element that routes dialing sequences, and that a "mobile switch center" can be a routing center. The parties dispute, however, whether or not a "routing center" is limited to a "mobile switch center." The defendants contend that it is not, and the court agrees. The term mobile switch center ("MSC") has an established meaning in the art. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313, 1316-1317 (Fed. Cir. 2005) (en banc); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996). Furthermore, other mobile network components were known to route information within a mobile network. For example, an STP is a network element of the VPLMN. *See* '487 patent 2:44-48. An STP was understood as an "[e]lement of an SS7-based Intelligent Network that performs routine SS7 signaling." CISCO, 339 (D.I. 71, DEFA10). Signaling includes the dialing sequence. *See id.*, 323 (D.I. 71, DEFA8). Therefore, although an MSC is a network component capable of routing a dialing sequence; <u>in this claim</u>, the applicants more broadly claimed a "routing center."

3. The term "is identified as" is construed to have its plain and ordinary meaning.[6]

4. The term "adapted to enable a call dialed . . . as said dialing sequence to be routed to said destination number" is construed to have its plain and ordinary meaning.[7]

5. The term "adapted to deliver short messages" is construed to mean "adapted to deliver a textual message sent using the short message service (SMS)."[8]

6. The term "said characteristics being obtained by said gateway using knowledge of a second cellular telephony network" is construed to have its plain and ordinary meaning.[9]

---

[5] The court rejects the defendants' proposed construction, as well as their contention that this term lacks antecedent basis. Starhome concedes that claim 10 originally recited a "mobile switch center" and that during prosecution the term was replaced with "routing center." However, during the *Markman* hearing, both parties admitted that the reason for this change is not cited and is unknown. *See* Tr. at 23:18-21 ("So why did the applicant amend it from mobile switch center to routing center? We don't know. There is nothing about the file history that mandated it or is explained. It's silent on the issue.") *see also* Tr. at 55:10-13 ("Mr. DiMatteo said he does not know why the change was made. I think we could guess . . . .") While it is true that amendments made by the applicant may cause the claim term to be interpreted more restrictively, this is only the case when during prosecution the patentee asserted that a claim term has a narrower meaning than usual in order to distinguish the claim from the prior art. *See, e.g., Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998). Here, there is no evidence to suggest that the applicants made this amendment in order to distinguish the claim from prior art. In fact, the applicants used the terms "mobile switch center" and "routing center" interchangeably throughout these patents, and continued to cite the limitation of a "mobile switch center" as distinguishing claim 10 over prior art. (D.I. 69 at 10.) Likewise, the applicant did not amend references in dependent claims to the "mobile switch center" of claim 10, and no further amendment was required by the examiner, who allowed the claims. (*Id.*) Furthermore, the term "mobile switch center" is a well-known term in the art that refers to network elements that perform call routing and other call-control functions. "The switching function [of a cellular system] is a combination of computing platforms and transmission facilities that route use information and signaling among nodes throughout the mobile network. The functional entity is called the mobile switching center (MSC)." Malcolm W. Oliphant, The Mobile Phone Meets The Internet, IEEE Spectrum, Aug. 1999; *see also* Newton's Telecom Dictionary (16th ed. 2000) ("MSC[:] 1. Mobile Switching Center. A switch providing services and coordination between mobile users in a network and external networks.") The use of the term "mobile switch center" throughout the patents is consistent with this understood meaning.

[6] *See supra* footnote 2.

[7] *Id.*

[8] The parties agreed that the term "short messages" is construed to mean "a textual message sent using the short message service (SMS)." (D.I. 60 at 7.) The terms "adapted" and "to deliver" are given their plain and ordinary meaning. *See supra* footnote 2.

[9] *See supra* footnote 2.

7. The term "said intelligent gateway being adapted to obtain information for said call completion using knowledge of said second cellular telephony network" is construed to have its plain and ordinary meaning.[10]

C. **The '431 Patent**

1. The term "coupling to; being coupled to; being respectively coupled to" is construed to mean "connecting to; being connected to; being respectively connected to."[11]

2. The term "packet-switch network" is construed to mean "a network that uses addressed packets to route traffic, for example, an Internet Protocol-based network."[12]

3. The term "other intelligent gateways" is construed to have its plain and ordinary meaning.[13]

4. The term "other mobile networks" is construed to have its plain and ordinary meaning.[14]

---

[10] *See supra* footnote 2.

[11] The court rejects the defendants' proposed construction which seeks to narrow this term to include only direct connections. This construction is not supported by the specification which uses the term "coupled" to refer to elements that are connected indirectly, through other elements. For example, the specification states that "VPLMN 30 and HPLMN 20 may be *coupled via* an international telephone network 26." '487 patent 2:42 and Fig. 1; *see also* 2:30-32. Therefore, it is apparent that the patents use the term "coupled," and similar terms, when referring to network elements that are logically connected, even if they are indirectly linked through other elements.

[12] The parties agree that a packet-switch network is a network that routes traffic using addressed packets. However, the defendants seek to limit the term to networks "distinct from the telephone network." The court rejects this proposed limitation. The term "telephone network" is not used or defined in Starhome's patents. Therefore, its use in claim construction would inject unnecessary ambiguity into the claim. Furthermore, the claims do not specify whether the packet-switch network is a telephone network, or whether the international telephony connection involves transmission of information in packets. Moreover, these are not elements of asserted claim 1. *See Phillips*, 415 at 1314 ("Differences among claims can also be a useful guide in understanding the meaning of particular claim terms.")

[13] The term "intelligent gateway" is construed above. *See supra* footnote 1.

[14] *See supra* footnote 2.

Dated: April 12, 2012

_____
CHIEF, UNITED STATES DISTRICT JUDGE